UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO and CITY OF SAINT PAUL, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 25 C 13863 |
| v. | ) | |
| | ) | Judge Alonso |
| UNITED STATES DEPARTMENT OF JUSTICE; PAMELA JO BONDI, in her official capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**Table of Contents**

Table of Authorities ................................................................................................................. iii

Introduction ............................................................................................................................... 1

Background ................................................................................................................................. 2

Argument .................................................................................................................................... 5

    I.     This Court Lacks Jurisdiction over Certain of Plaintiffs' Claims ........................... 5

         A.     No Article III Standing to Challenge Certain Conditions ........................... 5

         B.     No Subject Matter Jurisdiction over Claims to Order Monetary Payments ......................................................................................................... 6

    II.    Plaintiffs Are Unlikely to Succeed on the Merits ..................................................... 8

         A.     All Challenged Conditions Are Lawful and Constitutional ........................ 9

             1.   The Anti-Discrimination Condition Is Constitutional .......................... 9

                 (i)     Separation of Powers ................................................................ 11

                 (ii)    Spending Clause ...................................................................... 13

             2.   The EO Condition and the Federal Funding Restrictions Are Constitutional ....................................................................................... 16

                 (i)     Separation of Powers ................................................................ 16

                   (ii)    Spending Clause ...................................................................... 17

             3.   The Immigration Condition Is Constitutional ..................................... 18

         B.     The Challenged Conditions Do Not Violate the APA .............................. 20

             1.   Plaintiffs' Grant Awards Are Not Reviewable Because They Are Committed to Agency Discretion ................................................ 20

             2.   Plaintiffs' APA Claim Also Fails on the Merits ................................. 22

III.    Plaintiffs Have Failed to Demonstrate Irreparable Harm ........................................23

IV.    The Balance of the Equities Favors Denying the Motion .......................................24

Conclusion ...............................................................................................................................25

## Table of Authorities

Cases

*Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013) ............................ 24

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62 ................
  (D.C. Cir. 2004)..................................................................................................................... 7

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470 (9th Cir. 1985).................... 24

*Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.)..................................................................... 7, 25

*Bevis v. City of Naperville, Illinois*, 85 F.4th 1175 (7th Cir. 2023)............................................... 5

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020)............................................................ 15

*Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668 (9th Cir 1988) ................................... 23

*Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020)........................................................................... 19

*Climate United Fund v. Citibank, N.A*, 2025 WL 2502881 (D.C. Cir. 2025) ............................. 12

*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017)....................................... 12

*Dalton v. Specter*, 511 U.S. 462 (1994) ............................................................................... 11, 12

*Dep't of Educ. v. California*, 604 U.S. 650 (2025)..................................................................... 6, 7

*Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121 (2025) ...................... 6

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021)............................................................ 22

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) ......................................... 6

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983)......... 10, 12, 17

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................................................... 21

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997)............................................................... 8

*Illinois Republican Party v. Pritzker*, 973 F.3d 760 (7th Cir. 2020) ........................................... 23

*Illinois, et al. v.* FEMA, 2025 WL 2716277 (D. RI 2025) ......................................................... 20

*Ingersoll-Rand Co. v. United States*, 780 F.2d 74 (D.C. Cir. 1985)............................................. 7

*Lamie v. U.S. Tr.*, 540 U.S. 526 (2004) ..................................................................................... 15

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ....................................................................................... 21

*Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) .................................................... 9, 15, 19, 20

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013) ....... 21

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ................................................. 13, 14, 17

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) ..................................................... 21

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) ...................................................................... 17

*Morton v. Ruiz*, 415 U.S. 199 (1974) ........................................................................................ 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ..................... 22

*Murthy v. Missouri*, 603 U.S. 43 (2024) .................................................................................... 5

*Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) ............................................... 18

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................................... 5, 25

*Patchak*, 567 U.S. 209 (2012) ................................................................................................... 7

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) .............................. 13, 14, 18, 23

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ....................................................... 8

*Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018) .................................................. 22

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) ......................................................................................................... 24

*San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025) ..................... 11

*Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007) ....................................................................... 21

*South Dakota v. Dole*, 483 U.S. 203 (1987) ......................................................................... 13, 20

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................................................... 6

*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313 (9th Cir. 1994) ........................................................... 24

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) ................ 13, 15, 18, 19

*State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ..................................................................... 16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ........................................................................................................... 10, 14

*Sweeny v. Raoul*, 990 F.3d 555 (7th Cir. 2021) ........................................................................... 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ................................................................ 5

*Trump v. Boyle*, 145 S. Ct. 2653 (2025) ................................................................ 25

*Trump v. Wilcox*, 145 S. Ct. 1415 (2025) ................................................................ 25

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ................. 10

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ................................................. passim

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ........................................... 11, 12

## Statutes

5 U.S.C. § 701(a)(2) ................................................................ 21

8 U.S.C. § 1373 ................................................................ 3, 4, 19

28 U.S.C. § 1491(a)(1) ................................................................ 7

34 U.S.C. § 10381 ................................................................ 3

34 U.S.C. § 10382(c)(11) ................................................................ 15

34 U.S.C. § 10388 ................................................................ 3, 9

42 U.S.C. § 2000d ................................................................ 9, 12, 14

Public Law 103-322 ................................................................ 3

## Rules

25-4988 (9th Cir ................................................................ 11

## Regulations

2 C.F.R. § 200.300 ................................................................ 16

2 C.F.R. § 200.300(a) ................................................................ 2, 9, 11, 12

2 C.F.R. § 200.300(b) ................................................................ 15

2 C.F.R. § 200.303(b) ................................................................ 2, 16

## Other Authorities

85 Fed. Reg. 40081 (June 26, 2020) ................................................................ 4

EO 13933 ................................................................ 4

Executive Order 13933 ................................................................................................ 4

Executive Order 14168 ................................................................................................ 4

Executive Order 14173 ........................................................................................... 4, 11

Executive Order 14189 ................................................................................................ 4

Executive Order 14214 ................................................................................................ 4

**Introduction**

The Office of Community Oriented Policing Services ("COPS Office")—a component of the Department of Justice ("DOJ")—administers discretionary, competitive grant programs, including the two programs that are at issue in this complaint, that provide critical resources to law enforcement and the communities they serve. In FY 2025, the COPS Office received approximately 3,100 applications requesting more than $2 billion in funding, but with approximately $380 million available, the COPS Office was able to make only about 740 awards.

Plaintiffs Chicago and St. Paul received awards under these grant programs. Each plaintiff was aware of the terms and conditions of the grant programs when it applied, and their grant applications certified that they "will comply with all legal, administrative, and programmatic requirements" including "all Executive Orders, and applicable Presidential Memoranda, program regulations, laws, orders, and circulars." Notwithstanding that they were aware of and already agreed to the grant terms, plaintiffs now seek to dictate how the COPS Office administers its grant awards. Accordingly, plaintiffs move this court for emergency relief that would require the COPS Office to disburse potentially unrecoverable federal funds to recipients, without the terms that the COPS Office has determined properly implement and effectuate the grant programs. The requested preliminary relief is inappropriate.

To begin, plaintiffs lack standing to challenge some of the disputed grant conditions because they do not identify any harm caused by these restrictions. The court also lacks jurisdiction over plaintiffs' claims to the extent plaintiffs seek to require defendants to pay money pursuant to federal grant awards. Even if the court had jurisdiction, plaintiffs' substantive arguments are unlikely to succeed on the merits. Plaintiffs argue that the COPS Office cannot enforce four categories of grant conditions, claiming that the conditions both violate the Constitution and the Administrative Procedure Act. But the COPS Office has the statutory

1

authority to implement these conditions and has implemented similar provisions in prior funding years. There is nothing unlawful about ensuring that recipients of federal funds comply with federal law when administering a discretionary grant program. Moreover, the conditions requiring compliance with federal law are unambiguous and related to the COPS Statute. Finally, there is no irreparable injury, because plaintiffs' claimed damages are solely economic, and the balance of equities favors defendants. Accordingly, the court should deny plaintiffs' motion for a preliminary injunction.

## Background

The federal government, through various agencies (including defendants in this case), provides funding to state and local governments and other eligible stakeholders through grants and cooperative agreements that are subject to specified terms and conditions that govern the recipients' use of and continued receipt of the federal funds. As a default matter, government-wide grant regulations issued by the Office of Budget and Management require that federal agencies incorporate "statutory, executive order, other Presidential directive, or regulatory requirements" into the terms and conditions of federal awards. 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300(a) ("The Federal agency or pass-through entity must manage and administer the Federal award in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations. . . ."); 2 C.F.R. § 200.303(b) (Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards requiring all recipients of federal grants to comply "with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award").

The COPS Office at DOJ administers federal grants authorized under the Omnibus Crime Control and Safe Streets Act of 1968, as amended, and the Violent Crime Control and Law

Enforcement Act of 1994, Title I, Part Q, Public Law 103-322, 34 U.S.C. § 10381 et seq. ("COPS Statute"). The COPS Statute allows DOJ to distribute grants to state and local law enforcement for a variety of purposes linked to the goal of enhancing crime prevention by local law enforcement through working with the community. Randolph Decl. ¶¶ 3-8 (Attached as Exhibit 1). Unlike "formula" grant programs, where *Congress* mandates who receives grants and in what amounts, these two grant programs at issue in this complaint are discretionary, competitive, grants, where *DOJ* decides who receives grants and in what amounts. Under the COPS Statute, DOJ is granted discretion to "promulgate regulations and guidelines to carry out" the grant program, 34 U.S.C. § 10388, and to prescribe the required form and content of grant applications, *id*. § 10382(c). Randolph Decl. ¶¶ 4- 7.

Two of the discretionary grant programs that the COPS Office administers are the subject of this complaint: (1) FY 2025 Community Policing Development (CPD) Microgrants; and (2) FY 2025 COPS Hiring Program (CHP). *Id.* ¶¶ 4-8. Each notice of funding opportunity (NOFO) at issue here included a link to the applicable grant terms and conditions, and those terms and conditions include each of the challenged conditions. *Id.* ¶¶ 11-13; Exs. 1.A-1.D. In their applications for the grant awards, plaintiffs certified that they "will comply with all legal, administrative, and programmatic requirements that govern the applicant for acceptance and use of federal funds as outlined in the applicable COPS Office Grant Application Resource Guide, the COPS Office Award Owner's Manual, the DOJ Grants Financial Guide, Assurances, Certifications, all Executive Orders, and applicable Presidential Memoranda, program regulations, laws, orders, and circulars." *Id.* ¶ 19; Exs. 1.F, 1.G. Plaintiffs also certified in their applications that they are currently in compliance with 8 U.S.C. § 1373 ("§ 1373"), which provides that State and local governments may not prohibit their employees from sharing with the federal government the "citizenship or immigration status" of any individual. *Id.* ¶ 20.

3

Plaintiffs now challenge four of the terms and conditions that they were aware of and agreed to when they applied for the grant programs. Plaintiffs challenge three grant conditions, including that grantees: (1) "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws" ("Anti-Discrimination Condition"); (2) comply with 8 U.S.C. § 1373 ("Immigration Condition"); and (3) "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." ("EO Condition"). P. Mem. at 4-5.

Plaintiffs also challenge funding restrictions that prohibit COPS grants from being used (1) to support educational institutions requiring students to have received a COVID-19 vaccination to attend school, (2) to promote gender ideology, (3) to support projects that provide or advance diversity, equity, inclusion, and accessibility or environmental justice programs, and (4) if agencies failed to protect public monuments, memorials, and statues. Plaintiffs call these the "Federal Funding Restrictions." P. Mem. at 5.[1] Plaintiffs refer to the Anti-Discrimination Condition, Immigration Condition, the EO Condition, and the Federal Funding Restrictions collectively as the "Challenged Conditions." *Id.* at 4-5.

---

[1] These Federal Funding Restrictions were based on current national and administration priorities announced in five Executive Orders: Executive Order 14214, 90 Fed. Reg. 9949 (Feb. 214, 2025) (*Keeping Education Accessible and Ending COVID-19 Vaccine Mandates in Schools*); Executive Order 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025) (*Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government*); Executive Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (*Ending Illegal Discrimination And Restoring Merit-Based Opportunity*); Executive Order 14189, 90 Fed. Reg. 8849 (Jan. 29, 2025) (*Celebrating America's 250th Birthday*); Executive Order 13933, 85 Fed. Reg. 40081 (June 26, 2020) (*Protecting American Monuments, Memorials, and Statues and Combatting Recent Criminal Violence*). Randolph Decl. ¶ 14. Like the executive orders discussed above, each executive order at issue in the Federal Funding Restrictions makes clear that it must be "implemented consistent with applicable law." EO 14214 § 4(b); EO 14168 § 8(b); EO 14173 § 8(b); EO 14189 § 5(b); EO 13933 § 6(b).

In their complaint, plaintiffs allege that have been awarded a federal grant award through the COPS Office, and plaintiffs contend that they are counting on these federal funds to carry out various activities for each of their municipalities. But plaintiffs claim that they cannot accept the federal funds because the grants include the Challenged Conditions. Specifically, plaintiffs claim the Challenged Conditions are unlawful because they constitute *ultra vires* agency action and they violate the Separation of Powers, the Spending Cause, and the APA. Compl. ¶¶ 212-262.

**Argument**

Plaintiffs are not entitled to any emergency relief. A preliminary injunction is "'an extraordinary remedy never awarded as of right.'" *Bevis v. City of Naperville, Illinois*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant "'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Bevis*, 85 F.4th at 1188 (quoting W*inter*, 555 U.S. at 20). For the first factor, the movant must make a "'strong' showing that reveals how it proposes to prove its case." *Id.* For the second factor, "a mere possibility of irreparable harm will not suffice." *Id.* Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs cannot satisfy these requirements.

**I.      This Court Lacks Jurisdiction over Certain of Plaintiffs' Claims.**

**A.      No Article III Standing to Challenge Certain Conditions**

Plaintiffs invoking the court's jurisdiction must have Article III standing for "each claim that they press against each defendant," *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted), and "for each form of relief that they seek," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). And to show standing, a plaintiff must demonstrate, among other things, that it has

5

suffered an injury in fact—that is, it has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted); *see also Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2133 (2025) (plaintiffs must have "a personal stake in [a] dispute" and not be a "mere bystander[]" (citation omitted)). For pre-enforcement challenges, plaintiffs must show that they intend to "engage in a course of conduct arguably affected" by the challenged provision, and there is a "credible threat of prosecution thereunder." *Sweeny v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021).

Here, plaintiffs fail to demonstrate that they have suffered or will suffer an injury as a result of the Immigration Condition for the simple reason that they have already certified that they are in compliance with the Immigration Condition. Both plaintiffs certified in their grant applications that they are in compliance with § 1373, which is the only requirement of Immigration Condition. Nor do plaintiffs claim any imminent harm due to the Federal Funding Restrictions. Plaintiffs do not allege they have or will ever use COPS funding to support schools requiring CVID-19 vaccinations, or for programs promoting DEIA, or to promote gender ideology, or that they will fail to protect public monuments, memorials, and statutes. Accordingly, plaintiffs lack Article III standing to challenge the Immigration Condition as well as the Federal Funding Restrictions.

**B.      No Subject Matter Jurisdiction over Claims to Order Monetary Payments**

Generally, federal district courts lack jurisdiction to "order the payment of money under" the APA because the federal government's sovereign immunity for claims seeking non-monetary relief "does not extend to orders 'to enforce a contractual obligation to pay money.'" *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). The APA's limited waiver also does not apply "if any other

statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Match-E-Be-Nash-She-Wish Band of Pottawatomi India ns v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The Tucker Act (28 U.S.C. § 1491(a)(1)) is one such statute that "grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). Specifically, the Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), and it "impliedly forbids" bringing "contract actions" against "the government in a federal district court." *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (citation omitted). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

The Supreme Court has recently reiterated the preclusive scope of the Tucker Act. In April, the Supreme Court stayed a district court order to make payments based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants because the injunction was effectively an order "to enforce a contractual obligation to pay money." *California*, 604 U.S. at 651 (citation omitted). In August, the Supreme Court stayed a judgment vacating the federal government's termination of grants because the APA's limited waiver does not provide district courts with jurisdiction "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (Mem.) (2025) ("*NIH*") (citation omitted).

This court should follow the Supreme Court's stay rulings to the extent plaintiffs are seeking to enforce an obligation to pay money. Although plaintiffs purport to seek an injunction

against the Challenged Conditions, the relief plaintiffs request—uninterrupted grant funding—is fundamentally contractual in nature. Indeed, the motion goes well-beyond enjoining the Challenged Conditions. Plaintiffs instead expressly seek an order forcing the federal government to process grant awards and disburse grant funds, and to prohibit the government from terminating grant agreements based on the Challenged Conditions. Complt., Prayer for Relief.

As in *California* and *NIH*, any entitlement plaintiffs may have to these funding streams arises solely on the basis of their federal grant awards; plaintiffs have no statutory or constitutional right to such funding. Because plaintiffs' theories hinge on contractual routing of funding to them as provided for in their grant awards, cloaking their claims as seeking equitable relief under the Constitution and the APA is irrelevant. *See, e.g., Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (district court lacks jurisdiction over any case that "is in 'its essence contractual'"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act . . . .").

## II. Plaintiffs Are Unlikely to Succeed on the Merits.

Even if the court proceeds to the merits, plaintiffs have not demonstrated that they are likely to succeed. In fact, the opposite is true. All four Challenged Conditions were implemented within the DOJ's statutory authority in a manner consistent with past iterations of the COPS Office's terms and conditions incorporating federal law for all recipients of federal funds. Under the COPS Statute, Congress created a discretionary, competitive grant program and afforded DOJ significant discretion to administer the funds and to decide what limitations and conditions to impose on the funding. Congress directed only the type of work that COPS funds were to be used for and left it to DOJ to "promulgate regulations and guidelines to carry out" the grant program, 34 U.S.C. § 10388, and to prescribe the required form and content of grant applications through

regulations or guidelines, *id.* § 10382(b). So unlike formula grant programs, such as DOJ's Byrne JAG program, where *Congress* mandates the precise formula that decides who receives funding and in what amounts, under the COPS *discretionary* grant program, Congress authorized *DOJ* to decide who receives grants and how much they receive. *See e.g. Morton v. Ruiz*, 415 U.S. 199, 230-231 (1974) (when Congress provides limited funding to cover services for non-federal entities, the agency administering the funding must, in the absence of statutory direction from Congress, be able to "create classifications and eligibility requirements to allocate the limited funds"); *Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) (finding DOJ had authority under the discretionary COPS program to consider an applicant's cooperation with immigration enforcement when selecting grantees).

### A. All Challenged Conditions Are Lawful and Constitutional.

### 1. The Anti-Discrimination Condition Is Constitutional.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination laws. *See* 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to this authority, DOJ is required to ensure that all grant awards comply with federal law. Specifically, DOJ must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a). All relevant requirements must then be communicated to recipients and incorporated into the awards directly or by reference in the terms and conditions of the federal award. *Id.*

That is exactly what the COPS Office did. It provided the terms and conditions required for the awards and specifically told award recipients that they must certify that they do "not

operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws." That condition makes plain that recipients cannot violate federal anti-discrimination law, including by using protected characteristics "as a stereotype or negative." *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 213 (2023) (noting race can "never" be used as "a stereotype or negative"). And false certifications of compliance with civil rights laws are false statements that put recipients on notice that their compliance is material, *i.e.*, that it is "capable of influencing" the government's payment decision. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 (2016).

This condition is not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a *condition* to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI *and* with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than ten federal agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"—but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here is no different; although recipients must certify that all DEI programs they run comply with federal antidiscrimination law, this certification "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another court denied a similar challenge to a DEI certification provision, finding that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the Certification Provision because they have not shown at this juncture that the

provision goes beyond targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1200, 1221-22 (N.D. Cal. 2025), *appeal filed* No. 25-4988 (9th Cir. 2025). Further, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. Order, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law").

### (i) Separation of Powers

Plaintiffs' Separation of Powers claim is based entirely on the argument that no terms of the governing grant-related statute authorize DHS to impose the challenged conditions. P. Mem. at 10-13. This claim fails at the threshold because it is not a constitutional claim under *Dalton*. In any event, this challenge fails on the merits because DOJ is duly authorized, and indeed is *required*, to include conditions to ensure that recipients comply with anti-discrimination law. *See* 2 C.F.R. § 200.300(a).

*Dalton v. Specter*, 511 U.S. 462 (1994), forecloses plaintiffs' ability to raise statutory arguments with constitutional dressing. There, the Supreme Court reversed a federal circuit court that had "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. The court stated this reasoning was incorrect because the Supreme Court's "cases do not support the proposition that every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. Instead, the court "often distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory

11

authority." *Id.* Therefore, "claims simply alleging that the President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims, subject to judicial review." *Id.* at 473. The court should thus ignore plaintiffs' attempt to constitutionalize their statutory claim. *See Climate United Fund v. Citibank, N.A*, 2025 WL 2502881, at *10 (D.C. Cir. 2025) (citing cases); *New York v. NSF*, No. 25-cv-4452, 2025 LEXIS 148779 (S.D.N.Y. Aug. 1, 2025) (challenge to directives and grants was statutory, not constitutional, under *Dalton*).

In any event, plaintiffs' challenge fails on the merits. Not only does the COPS Office have broad discretion in administering discretionary grants under the COPS Statute, *see supra* at 8-9, but it fully complied with the applicable statutes by including the Anti-Discrimination Condition in its grant terms and conditions. Indeed, the COPS Office is *required* to include conditions to ensure that recipients comply with anti-discrimination law. *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); § 200.303(b). The Anti-Discrimination Condition sensibly implements Title VI. That Congress did not specifically spell out that the COPS Office must enforce anti-discrimination laws in each statute governing a grant program does not remove the COPS Office's authority to ensure that recipients follow those laws.

Additionally, "while some courts have reasoned that "*new* conditions on federal funds" may implicate separation of powers, *see Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 516 (N.D. Cal. 2017) (emphasis added), no such concern arises when the Executive merely reinforces preexisting legal obligations. The requirement that federal funding recipients follow the law is not new. *See Guardians*, 463 U.S. at 629-30 & n.22 (1983). As described above, federal agencies have consistently required recipients to certify their compliance with federal laws, including antidiscrimination laws. *Id*. The DEI qualification merely renders it narrower than routine compliance-with-law certifications, which plaintiffs do not argue violates Separation of Powers.

Thus, there is no basis for a Separation of Powers violation.[2]

### (ii)    Spending Clause

In the alternative, plaintiffs argue that even if Congress authorized the Anti-Discrimination Condition, it is unlawful under the U.S. Constitution's Spending Clause.  P. Mem. at `4-19.  This claim fails because the condition is unambiguous and relates to the general purpose of enforcing anti-discrimination law.

Under the Spending Clause, statutes passed by Congress must meet certain criteria. Absent a violation of another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted).  The grant conditions must "bear *some relationship* to the purpose of the federal spending," but that is a "low-threshold."  *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018).  In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'"  *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted).

Plaintiffs' first argument on this front is that the Anti-Discrimination provision is ambiguous.  P. Mem. at 14-15.  It is not.  The provision requires plaintiffs to "not operate any program (including any such programs having components relating to diversity, equity, and inclusion) that violates any applicable Federal civil rights or antidiscrimination laws."  To comply with the notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition.  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981).  *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as

---

[2]  Plaintiffs' *ultra vires* claims in Count 2 are based on the same allegations supporting their Separation of Powers claim — that Congress did not authorize defendants to impose the Challenged Conditions.  These claims fail for same reason plaintiffs' Separation of Powers claim fails — DOJ has authority to include the challenged conditions into their grant agreements.

Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition. *Id.* at 24–25. States make an "informed choice" when the Federal Government simply makes clear that acceptance of federal money obligates the States to comply with a condition. *Id.* at 25. Indeed, the Spending Clause is satisfied where a "statute's *intention to impose a condition* is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067. There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Id.*

Here, there is no doubt that grantees must comply with the Anti-Discrimination Condition. Plaintiffs have identified no ambiguity about whether they are subject to the condition; that is why they filed this lawsuit. While the COPS Office requires recipients to certify that any DEI programs they operate comply with anti-discrimination law, plaintiffs cannot plausibly argue that the more specific certification is impermissible given that it is subsumed within the broader certification prohibiting funding recipients from operating *any* programs that violate federal anti-discrimination law.

Indeed, it is unclear why plaintiffs believe this provision is ambiguous. They claim that they do not know whether they are certifying to compliance with those laws as written by Congress and long interpreted by the courts or to the Executive Branch's apparent view that all DEI is illegal—a view that contradicts prevailing anti-discrimination laws. P. Mem. at 14-15; Compt. ¶¶ 102-112. But that argument ignores both the Supreme Court—which recently reinforced longstanding precedent that stereotyping and discrimination against other races for the benefit of certain races are illegal, *Students for Fair Admissions*, 600 U.S. at 211-12—and Congress's express requirements for recipients to comply with federal anti-discrimination law and for agencies to effectuate that law when awarding federal funding. 42 U.S.C. §§ 2000d,

14

2000d-1.[3]  Moreover, plaintiffs are not being asked to sign on to the Administration's policy preferences, or even the Administration's views about the proper interpretation of federal anti-discrimination laws.  Plaintiffs are simply agreeing not to violate the laws currently in place. Plaintiffs may disagree with the government's legal interpretations and policy preferences in this area, but that has little to do with the Anti-Discrimination Condition, which simply asks funding recipients to certify that they are complying with anti-discrimination laws.  Finally, the consequences of failing to follow anti-discrimination laws, such as an investigation into False Claims Act liability, does not make the requirement to comply ambiguous.  *Cf. Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) (courts apply "plain, nonabsurd meaning" of a statute "even if . . . the words lead to a harsh outcome").

Next, plaintiffs argue that the Anti-Discrimination Condition is not just unrelated to the purpose of the COPS Statute but is inconsistent with it.  P. Mem. at 12, 18.  But there is no conflict between the Anti-Discrimination Condition and the statute's directive that grant recipients, "to the extent practicable," will "seek, recruit, and hire members of racial and ethnic minority groups and women."  34 U.S.C. § 10382(c)(11).  Indeed, the Anti-Discrimination Condition simply ensures that grant recipients will comply with anti-discrimination law (as the recipients are independently required to do)—in no way does the Anti-Discrimination Condition prevent grant recipients from hiring "members of racial and ethnic minority groups and women."  *Id.*  In any event, the reasonable relation requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding."  *Los Angeles v. Barr*, 929 F.3d at 1175.  The Supreme "Court has never struck down a condition on federal grants based on th[e] relatedness prong."  *Id.*

There is no need for this court to break new ground, as agencies have long applied grant conditions like the Anti-Discrimination Condition to further all manner of purposes and

---

[3] Plaintiffs also insinuate that following the Anti-Discrimination Condition may cause them to violate the Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020), *see* Compt. ¶ 106, but the relevant regulations make clear that agencies must ensure that recipients do not discriminate "based on sexual orientation and gender identity consistent with the Supreme Court's reasoning in *Bostock*." 2 C.F.R. § 200.300(b).  Plaintiffs have not demonstrated that they would be forced to ignore *Bostock* if they choose to accept federal funds.

objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the Federal award"). Plaintiffs cite no case where similar conditions enforcing federal anti-discrimination law have been held to be unrelated to the grantee's receipt and expenditure of federal funds. That is because these conditions prevent the expenditure of federal funds on activities that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something disquieting in the idea of States and localities seeking federal funds to enforce their own laws while themselves hampering the enforcement of federal laws, or worse, violating those laws.").

### 2. The EO Condition and the Federal Funding Restrictions Are Constitutional.

Plaintiffs' challenges to the EO Condition and Federal Funding Restrictions (all of which are based on national and administration policies announced through executive orders, *see* Randolph Decl. ¶ 16) are similarly misguided. Here, plaintiffs again argue that the EO Condition and the Federal Funding Restrictions violate the Separation of Powers and the Spending Clause. Both arguments lack merit.

#### (i) Separation of Powers

Like the Anti-Discrimination Condition, plaintiffs' challenge to the COPS Office's ability to impose the EO Condition and the Federal Funding Restrictions is a statutory claim disguised as a constitutional one precluded by the Supreme Court's decision in *Dalton*, so the claim fails on that basis alone. *See supra* at 13-14.

In any event, the COPS Office is required to incorporate into the terms of its grants "national policy requirements," including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300. And the COPS Office has also applied similar conditions for several years. Randolph Decl. ¶ 25; Ex. 1.H (the COPS Office has consistently required grant recipients to comply with "all other applicable program requirements, laws, orders,

16

regulations, or circulars"). Accordingly, there is nothing new about these grant requirements; the EO Condition and the Federal Funding Restrictions here are lawful and within the COPS Office's authority.

### (ii)    Spending Clause

The EO Condition and the Federal Funding Restrictions also do not violate the Spending Clause because they are unambiguous and related to the purpose of the grants. To start, these conditions are unambiguous. Like the COPS Office grant conditions issued in prior years, the EO Condition and the Federal Funding Restrictions merely require plaintiffs to comply with executive orders in the same manner as they would have to follow any changes to federal statutes or regulations or intervening court decisions. The EO Condition and the Federal Funding Restrictions here are as clear as those prior requirements and readily satisfy the Spending Clause standard. *See Mayweathers*, 314 F.3d at 1067. Indeed, the EO Conditions do "not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law," even as federal law shifts when Congress passes laws or the Supreme Court interprets laws differently. *Guardian Ass'n*, 463 U.S. at 630 (Marshall, J., dissenting). Moreover, plaintiffs' claims that some of the Federal Funding Restrictions are unclear does not make them unconstitutional. Not only can plaintiffs seek to clarify beforehand if their intended grant uses conflict with these restrictions,[4] but there is no additional risk of civil or criminal enforcement if plaintiffs are mistaken.

Plaintiffs also provide no specificity about why they believe the EO Condition is

---

[4] If plaintiffs are genuinely confused, they may either review definitions and explanations in the relevant Executive Orders upon which the restrictions are based or contact the COPS Office directly. Randolph Decl. ¶ 14, 24. *See also*, *See, e.g.*, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to DEI—and gender ideology— executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit").

ambiguous. Plaintiffs point to no Executive Orders related to grants that they are unsure apply. Instead, plaintiffs chose to facially challenge the EO Condition without explaining what hypothetical ambiguities exist. Such "facial challenges are disfavored" because courts must examine "how a law works in all of its applications." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (explaining facial challenges in the First Amendment context). Plaintiffs provide no examples of Executive Orders that they believe may cause them harm, instead choosing to merely argue that the EO Condition is ambiguous because plaintiffs cannot ascertain what it means to comply with all executive orders related to grants that this Administration might issue in the future. P. Mem. at 19. Such compliance is commonplace for recipients, who are regularly required to ensure their programs comply with all federal law, even as it shifts when Congress passes laws or the Supreme Court interprets laws differently.

Finally, the EO Condition and the Federal Funding Restrictions surpass the "low-threshold" of being reasonably related to the purpose of expenditure. *See Becerra*, 284 F. Supp. 3d at 1034. The COPS Office is required to ensure that all grants comply with federal law, and the EO Condition and the Federal Funding Restrictions are another way to ensure that requirement is met.

### 3. The Immigration Condition Is Constitutional.

Even assuming plaintiffs have standing to challenge the Immigration Condition and that the challenges constitute constitutional claims, their Separation of Powers and Spending Clause claims fail.

Plaintiffs' Separation of Powers claim fails because, as previously explained, Congress granted DOJ broad discretion to select the criteria in deciding how best to spend limited COPS funding. The Ninth Circuit made this clear when it held that Congress granted DOJ authority under the COPS Statute to preference applicants who cooperate with immigration enforcement

18

when awarding discretionary COPS grants. *Los Angeles v. Barr*, 929 F.3d at 882. That court held that given the broad discretion Congress afforded DOJ in administering the COPS grant program, DOJ may incorporate its policy goals such as immigration enforcement when awarding competitive grants. *Id.* at 1177-78 (finding that Congress gave DOJ broad authority to create and implement a competitive grant program and prescribe the form of the application and the information it will require). The court also concluded that considering a grant applicant's cooperation with immigration enforcement is not contrary to the COPS Statute and is actually consistent with the public safety and community policing focus of the Act. *Id.* at 1176, 1178.

The cases plaintiffs rely on are distinguishable in that they analyze an entirely different grant program under a different statute. Plaintiffs' cited cases did not consider *discretionary* grants under the COPS Statute, but rather evaluated *formula* grants under Byrne JAG Statute where Congress provides a specific formula that dictates who the grantees are and the precise amount of funding they receive. *See Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020). In considering whether DOJ had discretion to condition federal grants on an Immigration Condition requiring compliance with § 1373, the Seventh Circuit distinguished between a discretionary grant and a formula grant, noting that such discretion is compatible with discretionary grants but is "fundamentally inconsistent" with formula grants, such as the Byrne JAG grants. *Id.* at 906 (vesting DOJ with discretion to condition Byrne JAG grants on § 1373 compliance "would render irrelevant or illogical the statute's exacting delineation of the formula for grant awards and the precise limits on the extent to which the Attorney General can deviate from that distribution"). Thus, The Seventh Circuit's decision that plaintiffs rely upon actually supports defendants' position by acknowledging the significantly broader discretion afforded agencies administering the discretionary grants in this case compared to formula grants in that case.

Plaintiffs' Spending Clause claim likewise fails because the Immigration Condition is unambiguous and related to the COPS Statute. *See L.A. v. Barr,* 929 F.3d at 1176 ("the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process, such as the [COPS] program in this case"). Plaintiffs are simply being asked to comply with an existing federal law, § 1373, that regulates the sharing of citizenship and immigration status of individuals. And plaintiffs apparently understand how to comply with § 1373 since they both have already certified they are complying with it. Additionally, "cooperating with immigration enforcement is in pursuit of the general welfare and meets the low bar of being germane to the federal interest in providing the funding to" address the purpose of the statute in addressing crime and enhancing public safety. *Id.*

Finally, plaintiffs claim that the government cannot enforce the Immigration Condition because § 1373 likely violates the Tenth Amendment and does not preempt Chicago's Welcoming City Ordinance. P. Mem. 20-21. However, the issue in this case is not whether the government can enforce § 1373 *directly* against States and local governments, but rather whether the government can require compliance with § 1373 *indirectly* by conditioning such compliance in exchange for federal funding. It is well established that in the context of federal funding, the United States may "induce States to adopt policies that the Federal Government itself could not impose" as long as it complies with limitations of the Spending Clause. *See Dole*, 483 U.S. at 210 (rejecting the argument that the Spending Clause imposes "a prohibition on the indirect achievement of objectives which Congress is not empowered to achieve directly"); *Illinois v. FEMA*, 2025 WL 2716277, * 13 (D. RI 2025). Accordingly, even if the United States cannot enforce § 1373 upon plaintiffs directly, that has no bearing on whether the government can impose it indirectly in the form of a funding condition.

20

**B.     The Challenged Conditions Do Not Violate the APA.**

**1.     Plaintiffs' Grant Awards Are Not Reviewable Because They Are Committed to Agency Discretion.**

Plaintiffs are unlikely to prevail on their APA claim because the grant awards at issue are discretionary.  Randolph Decl. ¶¶ 4-8. Plaintiffs thus fail to demonstrate that there are standards for the court to apply in reviewing the challenged conditions for these discretionary grants.

Ordinarily, for discretionary grants, agencies are free to reject applications in what is a competitive process.  And "before any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S. 821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Under § 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830.  "In such a case," the relevant statutory provision "can be taken to have committed the decisionmaking to the agency's judgment absolutely." *Id*. (internal quotation marks omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007).  This is why agency grant-award decisions are presumptively unreviewable.  *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Challenged Conditions—which merely reiterate that recipients must comply with federal law and applicable executive orders—are unreviewable for these discretionary grants. No statutory provision limits the COPS Office's discretion to issue funding, much less do the statutes prevent requiring compliance with federal law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### 2. Plaintiffs' APA Claim Also Fails on the Merits.

Plaintiffs' initial APA argument parrots their earlier claims that the COPS Office violated the Constitution by supposedly exceeding its statutory authority to implement the Challenged Conditions. P. Mem. at 19. But that is wrong. As discussed above, the COPS Office has the authority to require grantees to follow applicable federal law and executive orders, as it did in prior fiscal years.

The COPS Office's implementation of the Challenged Conditions was also not arbitrary or capricious. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423. Here, given the agency's discretion to impose appropriate terms and conditions on the receipt of discretionary grant funding, and general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to certify their compliance

with executive orders and applicable federal laws can hardly be considered arbitrary or capricious.

Plaintiffs argue otherwise based on the mistaken premise that the Challenged Conditions effect a radical change in the conditions applicable to COPS Grants and that plaintiffs have a reliance interest on COPS Office grants to serve critical public safety needs. P. Mem. at 19-20. But although the COPS Office's grant conditions may have been worded differently in the past, the Challenged Conditions are not new, nor do they constitute a "radical change" in conditions applicable to COPS grants. As discussed above, the Anti-Discrimination Condition simply requires plaintiffs to certify compliance with otherwise applicable anti-discrimination law. And previous iterations of the COPS Office's grant terms have also required compliance with executive orders, including executive orders that limit how federal funds are spent. Randolph Decl. ¶ 28. Finally, courts have made clear since at least 2019 that DOJ may lawfully favor COPS grantees that cooperate in immigration enforcement. Thus, plaintiffs cannot argue past reliance interests in not following federal law and Executive Orders. Plaintiffs also do not explain what reliance interest they could have in being able to violate applicable executive orders and federal law while participating in programs funded by the federal government. Any harm to the public safety of plaintiffs' communities due to their choice to not accept federal funds with appropriate conditions is not caused by the federal government. Instead, any harm here is self-inflicted if plaintiffs choose not to accept the awarded funds.

## II. Plaintiffs Have Failed to Demonstrate Irreparable Harm.

Plaintiffs seeking the extraordinary remedy of a preliminary injunction must also "demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22 (citation omitted). The "possibility" of such harm is insufficient, *id.*, as is "speculative injury". *Id.* at 21. "Neither is a 'better than negligible'" chance. *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). *See Caribbean Marine Servs. Co. v. Baldridge*, 844

F.2d 668, 674 (9th Cir 1988) (plaintiffs must show both immediacy and likelihood that they will be irreparably harmed absent emergency relief).

Plaintiffs have failed to make that showing here because, fundamentally, the harms they assert are economic. *See, e.g.*, Mot. at 21-22 (describing "budgetary uncertainty" and other "financial" harms). They seek the payment—on the terms that they prefer—of federal funds pursuant to their contracts with the federal government. The associated injuries plaintiffs assert are thus definitionally not irreparable, *see, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991), particularly because the plaintiffs allege no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citation omitted).

Plaintiffs also assert that they face harm from being put to the choice "between two equally untenable options: acceding to unlawful and unascertainable conditions, or foregoing grant awards that fund essential public safety projects." P. Mem. at 21. That argument fails. There is no constitutional violation, and it is always the case that "if a party objects to a condition on the receipt of federal funding, its recourse is to decline the funds." *Agency for Int'l Dev. v. All. For Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). If a party makes the voluntary choice to forego those funds, any resulting economic harm cannot constitute an irreparable injury attributable to the federal government. Nor do plaintiffs demonstrate that the acceptance of terms they consider to be "unconstitutional"—but that require them to comply with otherwise applicable federal law—imposes any concrete, imminent harm necessitating preliminary relief.

### III. The Balance of the Equities Favors Denying the Motion.

Plaintiffs must also demonstrate that "the balance of equities tips in [their] favor" and "an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citation omitted). These "factors

24

merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

In arguing that the public interest weighs in their favor, plaintiffs mostly repackage their arguments on alleged irreparable harm and on the merits. Those arguments fail. On the other hand, granting plaintiffs' motion would significantly disrupt the COPS Office's ongoing consideration of grant applications and would prevent the COPS Office from disbursing finite federal funding to thousands of other applicants for these same discretionary grant programs (all of which, like plaintiffs, accepted the Challenged Conditions). *See Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (granting request for stay of injunction "to avoid [] disruptive effect[s]" on government operations). Further, a preliminary injunction risks irreparable harm to the government and to the public interest by requiring the payment of money that the government may never recover. *See NIH*, 145 S. Ct. 2658. This decision must "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). Therefore, the balance of the equities and public interest favor denying plaintiffs' request for relief.

## Conclusion

For the foregoing reasons, the court should deny plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Patrick Johnson
PATRICK JOHNSON
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5327
patrick.johnson2@usdoj.gov