**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO and CITY OF SAINT PAUL, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE; PAMELA JO BONDI, in her official capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity, <br><br> Defendants. | Civil Action No. 1:25-cv-13863 <br><br> Hon. Jorge L. Alonso |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND STAY OF AGENCY ACTION

Plaintiffs' opening brief ("Mem.") showed that courts have repeatedly enjoined grant conditions like the Challenged Conditions that are at issue in this case. Since then, other courts—including Judge Shah in a case filed by Plaintiffs—have reached the same conclusion. *City of Chi. v. Noem*, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025); *Cnty. of Santa Clara v. Noem*, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025). Defendants' opposition ("Opp.") offers arguments that "have been soundly rejected by courts around the country, which have found similar agency conditional funding schemes to be unconstitutional." *Santa Clara*, 2025 WL 3251660, at *1. The result should be the same here.

## I.        The Court Has Jurisdiction.

Defendants argue that Plaintiffs lack standing to challenge the Immigration Condition because Plaintiffs' grant applications certified compliance with 8 U.S.C. § 1373. Opp. at 6. In fact, Saint Paul submitted an addendum to its application stating that it "cannot agree" to that certification. Hvizdos Dec., Ex. A. Beyond this, the applications cited "additional information" about the certification in accompanying guides, Randolph Dec., Ex. 1.F § 2(a), which stated that "*recipients* of this award … must comply with 8 U.S.C. §1373." *Id.*, Ex. 1.C at 33 (emphasis added). Defendants thus suggested that the section 1373 certification takes effect only if an applicant accepts the grant. *See also id.*, Ex. 1.E ¶ 3.

Even if Plaintiffs' applications certified compliance with section 1373, Plaintiffs seek to enjoin Defendants from "enforcing" the Immigration Condition or "similar … conditions" in Plaintiffs' "applications." Dkt. 11 at 1-2. Plaintiffs have standing to seek that relief. *See Chi. v. Noem*, 2025 WL 3251222, at *10 n.14 (preliminarily enjoining agency "from enforcing the conditions in any grant that has been accepted"); *accord R.I. Coal. Against Domestic Violence v. Kennedy*, 2025 WL 2988705, at *4, *14 (D.R.I. Oct. 23, 2025). Moreover, executing COPS grants

and accepting grant funds risk additional consequences. *See* Maulawin Dec., Ex. 2 at 2, 11, 16 (describing "remedies" for alleged violations of grant's terms and conditions). Therefore, nothing in Plaintiffs' applications could affect Plaintiffs' standing to challenge the Immigration Condition in Plaintiffs' grants. *See City of Chi. v. Sessions*, 888 F.3d 272, 289 (7th Cir. 2018) (holding that Chicago "had standing" to challenge immigration-related grant conditions).

Defendants also argue that Plaintiffs lack standing to challenge the Federal Funding Restrictions because Plaintiffs do not allege that they will use COPS funds for restricted purposes. Opp. at 6. But to have standing, "Plaintiffs do not need to show or confess that their conduct will actually violate" grant conditions if "there 'is a credible threat of prosecution.'" *Chi. v. Noem*, 2025 WL 3251222, at *3. The current Administration has already sued Plaintiffs and has threatened suits against grantees that sign anti-DEI certifications. *See* Mem. at 8-10. In any event, the Federal Funding Restrictions are ambiguous, making it impossible for Plaintiffs to know if Defendants will deem Plaintiffs' conduct to be unlawful.

Finally, Defendants assert that the Tucker Act deprives the Court of jurisdiction. Opp. at 6-8. Plaintiffs' opening brief explained that district courts have "with near or total uniformity" exercised jurisdiction over suits challenging grant conditions. Mem. at 10-11. Since then, other courts joined "this wall of authority." *Santa Clara*, 2025 WL 3251660, at *28; *accord Chi. v. Noem*, 2025 WL 3251222, at *4-*5. Ignoring this, Defendants argue the Court lacks jurisdiction "to the extent" Plaintiffs seek "to enforce an obligation to pay money" that "is fundamentally contractual." Opp. at 7-8. Plaintiffs request only equitable relief, however, and there is nothing "contractual" about Plaintiffs' claims "because no such contract (i.e., executed grant agreement) yet exists." *California v. Dep't of Transp.*, 2025 WL 3072541, at *5 (D.R.I. Nov. 4, 2025).

**II.      Plaintiffs Will Likely Succeed on the Merits.**

**A.      Defendants Violated the Separation of Powers and Acted Ultra Vires.**

**1.      No Law Authorizes the Challenged Conditions.**

Defendants suggest that the COPS Statute authorizes all of the Challenged Conditions, citing 34 U.S.C. §§ 10382(b) and 10388. Opp. at 8-9. Those provisions permit the Attorney General to (a) prescribe the form and content of COPS grant applications and (b) "promulgate regulations and guidelines to carry out this subchapter." Courts have repeatedly enjoined grant conditions imposed under programs whose authorizing statutes provide substantively identical authority. *E.g.*, *Chi. v. Noem*, 2025 WL 3251222, at *5 (15 U.S.C. §§ 2218(b)(5), 2229a(b)(2); 46 U.S.C. § 70107(i)(1)); *Santa Clara*, 2025 WL 3251660, at *3-*4; *Illinois v. FEMA*, 2025 WL 2716277, at *1 (D.R.I. Sept. 24, 2025). The result should be the same here.

As for section 10382(b), Defendants' authority over grant applications is largely irrelevant; this case focuses on the grants themselves. Regardless, authorization to prescribe the application's "form" does not allow Defendants to impose substantive conditions. And Congress listed the required "contents" of COPS applications. 34 U.S.C. § 10382(c). Congress's list does not mention immigration enforcement, anti-DEI, gender ideology, or any other Challenged Condition.

Section 10388 authorizes guidelines only as necessary "to carry out" the COPS Statute. The COPS Statute identifies the purposes for which Defendants may award grants, 34 U.S.C. § 10381(b), and factors that Defendants may consider in awarding grants, *id.* § 10381(c). "When Congress limits the purpose for which a grant can be made, it can be presumed that it intends that the dispersing agency makes its allocations based on factors solely related to the goal of implementing the stated statutory purposes in a reasonable fashion, rather than taking irrelevant or impermissible factors into account." *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985); *see Am.*

3

*Petroleum Inst. v. EPA*, 52 F.3d 1113, 1119 (D.C. Cir. 1995) (agency "cannot rely on its general authority to make rules ... when a specific statutory directive defines the relevant functions of [the agency]"). Section 10381 does not mention the Challenged Conditions, and Defendants do not explain how the Conditions are necessary "to carry out" the COPS Statute.

Congress knows how to broadly authorize agencies to impose grant conditions when it wishes to do so. *E.g.*, 42 U.S.C. § 10305(a)(2) (agency "may establish any [grant] condition" that it "considers to be in the best interest of the Nation"). Congress's failure to do in the COPS Statute further demonstrates that Congress did not authorize the Challenged Conditions.

Defendants' Condition-specific arguments also fail to establish proper authority:

***Discrimination Condition***. Defendants invoke Title VI, which prohibits "discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI does not, however, authorize Defendants "to police recipients' conduct outside federally funded activities." *Chi. v. Noem*, 2025 WL 3251222, at *8. Yet consistent with their position in other litigation, *see Chi. Women in Trades v. Trump*, 778 F. Supp. 3d 959, 984 (N.D. Ill. 2025) ("*CWIT*"), Defendants maintain that the Discrimination Condition prohibits "*any* programs that violate federal anti-discrimination law"—apparently including programs that are funded by other agencies or are not federally funded at all. Opp. at 14.[1]

Even if the Discrimination Condition were limited to DEI programs using COPS funding, courts have repeatedly held that Title VI does not authorize anti-DEI grant conditions. *See Santa Clara*, 2025 WL 3251660, at *33; *City of Seattle v. Trump*, 2025 WL 3041905, at *6-*8 (W.D. Wash. Oct. 31, 2025); *cf. Hous. Auth. of City & Cnty. of S.F. v. Turner*, 2025 WL 3187761, at *11

---

[1] The Discrimination Condition prohibits DEI programs that violate "applicable" federal laws. Maulawin Dec., Ex. 2 at 5. Contrary to Defendants' apparent position, the Seventh Circuit has confined the term "applicable federal laws" to laws that "apply specifically to grants or grantees." *Barr*, 961 F.3d at 899.

4

(N.D. Cal. Nov. 14, 2025). On the contrary, the COPS Statute mandates DEI. *See* 34 U.S.C. § 10382(c)(11). Moreover, the Discrimination Condition requires grantees to agree their certification is "material" under the False Claims Act. Maulawin Dec., Ex. 2 at 5. Title VI does not permit Defendants to require grantees to waive an element of a claim under a non-discrimination law.

**Immigration Condition**. Defendants cite *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019), as support for the Immigration Condition. But as Plaintiffs explained, that case is distinguishable. Mem. at 13 n.1. Clarifying that the case did not involve "conditions o[n] receiving a grant," the majority applied a "highly deferential standard" under the since-discarded *Chevron* doctrine in holding only that DOJ could award extra points to certain applicants, putting others at a "slight competitive disadvantage." 929 F.3d at 1174, 1177. Even on that "limited" issue, *id.* at 1174, Plaintiffs submit that the dissent and district court correctly found that "DOJ exceeded its delegated powers to administer the COPS grant program." *Id.* at 1191 (Wardlaw, J. dissenting).

Defendants distinguish *City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020), as involving a formula grant. Opp. at 19. But as demonstrated by the many cases that have enjoined conditions imposed under competitive grant programs, *supra* at 13, Defendants still must identify congressional authority for the Challenged Conditions. Moreover, much of the Seventh Circuit's reasoning did not rely on the formulaic nature of the grant at issue there. For example, observing that Congress had rejected bills "'seeking to condition federal funding on compliance with 8 U.S.C. § 1373'"—including COPS funding—the Seventh Circuit stated that allowing DOJ "to override Congress's refusal to endorse section 1373 compliance … would effectively 'legislate' a different result.'" 961 F.3d at 902-03. In addition, the Seventh Circuit observed that the section 1373 certification "directly conflicts" with 34 U.S.C. § 10228(a) by "seek[ing] to prohibit" local governments from exercising "control" over their own police forces. 961 F.3d at 908-09.

5

Defendants ignore both points.

It is particularly critical to identify congressional authority for the Immigration Condition because section 1373 "eliminates" Plaintiffs' ability to "control" their employees and thus "effects a federally-imposed restructuring of power." *City of Chi. v. Sessions*, 321 F. Supp. 3d 855, 870 (N.D. Ill. 2018); *accord Chi. v. Barr*, 961 F.3d at 908-09. If "Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Even assuming that Congress could constitutionally do so, the COPS Statute does not unambiguously condition funding on grantees' assistance with federal civil immigration enforcement.

***Remaining Conditions***. Defendants argue that regulations authorize the Executive Order Condition and the Federal Funding Restrictions. Opp. at 16. But a "'*regulation* cannot create *statutory* authority; only Congress can do that.'" *Martin Luther King, Jr. Cnty. v. Turner*, 2025 WL 2322763, at *12 (W.D. Wash. Aug. 12, 2025); *accord City of Fresno v. Turner*, 2025 WL 2721390, at *10 (N.D. Cal. Sept. 23, 2025); *see La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 357 (1986) ("an agency literally has no power to act … unless and until Congress confers power upon it"). And the COPS Statute "do[es] not allow Executive Orders to control the distribution of funds." *Chi. v. Noem*, 2025 WL 3251222, at *9 n.13.

Defendants also assert that they previously imposed conditions requiring compliance with "'orders.'" Opp. at 16. Those conditions remain in Plaintiffs' COPS grants (Maulawin Dec., Ex. 2, Condition 8), so the Executive Order Condition and Federal Funding Restrictions must mean something new. And even if the prior conditions encompassed executive orders, the Supreme Court has rejected this sort of "curious appeal to entrenched executive error." *Rapanos v. United*

*States*, 547 U.S. 715, 752 (2006). Defendants "cannot take by adverse possession the authority to impose special conditions in a way that shields the devaluation of statutory language from judicial review." *City of Providence v. Barr*, 954 F.3d 23, 45 (1st Cir. 2020).

### 2. *Dalton* Is Inapplicable.

Citing *Dalton v. Specter*, 511 U.S. 462 (1994), Defendants argue that Plaintiffs' separation-of-powers claim asserts only statutory violations. Opp. at 11-12, 16. But the complaint does not merely allege that Defendants violated the COPS Statute. Rather, the complaint alleges that Defendants usurped Congress's power of the purse by acting without any Article II or statutory authority. Compl. ¶¶ 152-54. *Dalton* permits constitutional challenges to executive actions taken "in the absence of any authority." *CWIT*, 2025 WL 1331743, at *5 (N.D. Ill. May 7, 2025).

Moreover, "*Dalton* does not preclude fundamentally constitutional claims in situations where the facts could also be characterized as statutory violations." *City of Chi. v. DHS*, 2025 WL 3043528, at *14 (N.D. Ill. Oct. 31, 2025). And this case "implicates … the balance of power between the executive and legislative branches," making *Dalton* inapplicable. *Id.* at *15; *see Chi. v. Barr*, 961 F.3d at 931 (holding that the Attorney General "exceeded the authority delegated by Congress" and "violated the … separation of powers" based on the same conduct).

### B. Defendants Violated the Spending Clause.

### 1. The Challenged Conditions Are Impermissibly Ambiguous.

Defendants argue that the Spending Clause demands only that Congress "make clear that acceptance of federal funds obligates States to comply with a condition." Opp. at 13-14 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981)). That would make the unambiguity requirement meaningless; any enumerated condition, no matter how ambiguously worded, would suffice. As courts have repeatedly held, however, Defendants misread *Pennhurst*.

*See California v. HHS*, 2025 WL 3459579, at \*11 (D. Mass. Dec. 2, 2025); *Santa Clara*, 2025 WL 3251660, at \*36. *Pennhurst* explained: "The crucial inquiry ... is not whether a State would knowingly undertake that obligation, but whether Congress spoke so clearly that we can fairly say that the State could make an informed choice." 451 U.S. at 25. The Challenged Conditions thus must be "'unambiguous[],'" so that Plaintiffs can make their choice "'cognizant of the consequences of their participation.'" *Chi. v. Barr*, 961 F.3d at 907.

**Discrimination Condition**. Defendants argue that the Discrimination Condition is unambiguous because it requires only compliance with anti-discrimination laws. Opp. at 14. In fact, "the Discrimination Condition is 'rife with vagueness and ambiguity, leaving grantees to speculate what is proscribed.'" *Santa Clara*, 2025 WL 3251660, at \*38. As discussed above, it is unclear whether the Discrimination Condition covers programs that Plaintiffs operate using funding from other federal programs or from non-federal sources. The terms and conditions separately require compliance with anti-discrimination laws, Maulawin Dec., Ex. 2 at 6-7, suggesting that the Discrimination Condition's isolation of DEI programs that violate those same laws must have additional effect. But as Judge Kennelly stated, "what might make any given 'DEI' program violate Federal anti-discrimination laws … is left entirely to the grantee's imagination." *CWIT*, 778 F. Supp. 3d at 984. Indeed, when pressed, federal government lawyers have been unable to explain which DEI activities are legal and which are not. *See id.*; *Nat'l Ass'n of Diversity Officers v. Trump*, 767 F. Supp. 3d 243, 282 (D. Md. 2025), *stayed*, No. 25-1189 (4th Cir.).

The Discrimination Condition's ambiguity is particularly problematic because the Condition requires Plaintiffs to agree that their certification is material under the False Claims Act. *See* Maulawin Dec., Ex. 2 at 5. Although Defendants maintain that they are not asking grantees "to sign on to … the Administration's views about the proper interpretation of federal anti-

8

discrimination laws," Opp. at 15, Defendants have made clear that they intend to sue grantees who do not share the Administration's views about the legality of DEI programs. *See* Mem. at 8-10. Plaintiffs' "well-founded fear that the Department of Justice may use the [False Claims Act] as a 'weapon' against grant recipients, lends credence to plaintiffs' arguments that the Discrimination Condition is ambiguous." *Santa Clara*, 2025 WL 3251660, at *38.[2]

***Immigration Condition***. Courts have repeatedly held that section 1373 certification conditions are ambiguous because the federal government has not explained what compliance requires. Mem. at 14-15. Defendants respond that Plaintiffs "understand how to comply with § 1373" because their applications certified compliance. Opp. at 20. That rhetorical point is incorrect for reasons described above and, regardless, does not affect whether the Condition is ambiguous. Moreover, Defendants have appealed Judge Jenkins's decision rejecting Defendants' interpretation of section 1373, increasing uncertainty about section 1373's scope. *See* Mem. at 8.

***Remaining Conditions***. Courts have repeatedly enjoined conditions like the Executive Order Condition and Federal Funding Restrictions as impermissibly vague. Mem. at 16-17; *see also Santa Clara*, 2025 WL 3251660, at *38. Ignoring this, Defendants say the Conditions require only that Plaintiffs "'comply with the law'" as set forth in executive orders. Opp. at 17. As an initial matter, the Executive Order Condition requires compliance with "Presidential Memoranda"—which are not executive orders—and the Federal Funding Restrictions do not

---

[2] Defendants' reliance on *San Francisco A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025), and *Nat'l Ass'n of Diversity Officers*, No. 25-1189, ECF No. 29 (4th Cir. Mar. 14, 2025), is misplaced. Those cases involved pre-enforcement challenges to executive orders, where the courts "reserve[d] judgment on how the administration enforces these executive orders," *id.* at 4 n.1 (Diaz, C.J., concurring), based on the "understanding" that the orders did not implicate "activities outside the scope of the funded activities." *Id.* at 7 (Harris, J., concurring); *see S.F. A.I.D.S. Found.*, 786 F. Supp. 3d at 1218 n.10 (finding it "unclear" whether the executive orders applied to conduct "outside of the grant-funded activity"). By contrast, Plaintiffs challenge conditions that Defendants inserted in grants; the Discrimination Condition apparently applies outside grant-funded activity; and the Attorney General later issued the Bondi Memo.

mention executive orders. Regardless, "an executive order is not 'law.'" *California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023). Defendants also suggest that Plaintiffs could call DOJ if Plaintiffs are unsure how to interpret an executive order. Opp. at 17 n.4. That sort of "case-by-case clarification" does not give Plaintiffs "a 'reasonable opportunity to know what is prohibited' at the point in time when they must decide whether to subject themselves to the challenged conditions." *Hous. Auth.*, 2025 WL 3187761, at *15. Finally, Defendants say that Plaintiffs did not identify any ambiguous executive orders. Opp. at 18. That is incorrect, Mem. at 17, and Plaintiffs cannot identify ambiguities in executive orders that have not yet been issued.

### 2. The Challenged Conditions Are Unrelated to the Grants' Purposes.

Defendants offer little basis to find a reasonable relationship between the Challenged Conditions and the COPS Statute beyond calling the requirement a "'low-threshold.'" Opp. at 15. But courts have repeatedly invoked the reasonable-relationship requirement to enjoin grant conditions. *E.g.*, *S.F. Unified Sch. Dist. v. AmeriCorps*, 789 F. Supp. 3d 716, 750 (N.D. Cal. June 18, 2025); *Illinois v. FEMA*, 2025 WL 2716277, at *14; *Cal. v. DOT*, 2025 WL 3072541, at *11.

The Discrimination Condition is "not only unrelated to" but "inconsistent with" the COPS Statute, *Santa Clara*, 2025 WL 3251660, at *39, which requires grantees to "seek, recruit, and hire members of racial and ethnic minority groups and women." 34 U.S.C. § 10382(c)(11). Defendants dispute that there is any inconsistency, Opp. at 15, but do not explain how grantees can both comply with the Discrimination Condition and affirmatively "seek" out minorities and women. Defendants also note that agencies have long required grantees to comply with federal anti-discrimination laws while implementing federally funded programs. *Id.* at 15-16. But Defendants do not explain how there could be any relationship between the COPS program and Plaintiffs' conduct under programs funded by other agencies or non-federal sources.

10

The Immigration Condition also is not germane to the COPS Statute's purpose. *See* Mem. at 17-18. On the contrary, the Immigration Condition contravenes the COPS Statute by promoting local police assistance with federal civil immigration enforcement, undermining the "relationship of trust" between local police and local immigrant communities. *Chi. v. Sessions*, 888 F.3d at 291. Defendants respond by citing the Ninth Circuit's view that such assistance helps to "'address crime and disorder problems, and otherwise ... enhance public safety.'" *L.A. v. Barr*, 929 F.3d at 1176 (quoting Pub. L. No. 103-322 § 1701(a), 108 Stat. 1796). That quote omits key language from the COPS Statute's enactment (e.g., "to expand and improve cooperative efforts between law enforcement agencies and members of the community") and, regardless, has been replaced by a list of "purposes for which grants … may be made." 34 U.S.C. § 10381(b). The "purposes" at issue here are "to hire and train new, additional career law enforcement officers for deployment in community-oriented policing," *id.* § 10381(b)(2), and "establish collaborative programs that enhance the ability of law enforcement agencies to address the mental health, behavioral, and substance abuse problems of individuals encountered by law enforcement officers," *id.* 10381(b)(20). These purposes focus on enhancing cooperation between local law enforcement and the communities they serve, not a more-generalized interest in enhancing public safety.

Given these purposes, Judge Wardlaw correctly concluded that "enforcement of federal immigration policy is entirely unrelated" to COPS grants. *L.A. v. Barr*, 929 F.3d at 1191 (Wardlaw, J., dissenting). "All policing is ultimately designed with public safety in mind. But, all policing is not community-oriented policing, which fosters partnership between the police and their communities, not … partnerships between police and federal immigration enforcement …." *Id.* at 1195. If Defendants could condition COPS grants based on any factors that supposedly relate to "public safety," then Defendants would have "'nearly limitless discretion to select grant awardees

11

in ways not even tangentially related to community policing.'" *Id.* at 1195 n.48.

Defendants barely defend the relationship between COPS Grants and the Executive Order Condition or Federal Funding Restrictions, stating only that they ensure grantees "comply with federal law." Opp. at 18. That argument—which wrongly assumes that federal law prohibits "gender ideology," "environmental justice," and so on—fails for the reasons discussed above.

### C. Defendants Violated the APA.

#### 1. Defendants' Decisions Are Reviewable.

Defendants argue that Plaintiffs cannot pursue APA claims because COPS grants are discretionary and thus are unreviewable. Opp. at 21-22 (citing 5 U.S.C. § 701(a)(2)). To "honor the presumption of judicial review" under the APA, courts interpret section 701(a)(2) "'narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019).

Courts have consistently reviewed APA claims challenging conditions on discretionary grants, finding "no merit" in the notion that "discretionary grants are somehow categorically unreviewable." *Illinois v. FEMA*, 2025 WL 2716277, at *10; *e.g.*, *Chi. v. Noem*, 2025 WL 3251222, at *5; *Santa Clara*, 2025 WL 3251660, at *41; *Fresno*, 2025 WL 2721390, at *6-*7; *Martin Luther King Jr., Cnty. v. Turner*, 785 F. Supp. 3d 863, 884 (W.D. Wash. June 3, 2025); *S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1288 (N.D. Cal. 2025). The COPS Statute likewise provides ample grounds to review Defendants' actions, identifying the purposes for which grants may be made and factors that Defendants may consider. *See* 34 U.S.C. § 10381.

Defendants cite *Lincoln v. Vigil*, 508 U.S. 182 (1993), for the notion that "grant-award decisions" are generally unreviewable. Opp. at 21. But Plaintiffs are not challenging a decision to

12

award grants. Beyond this, *Lincoln* involved a lump-sum appropriation that did not "circumscribe agency discretion … by putting restrictions in the operative statutes." 508 U.S. at 193. By contrast, the COPS Statute authorizes grants for restricted purposes. 34 U.S.C. § 10381. Section 701(a)(2) thus does not preclude review. *See Chi. v. DHS*, 2025 WL 3043528, at *17, *22.

### 2. Defendants' Merits Arguments Fail.

Courts have repeatedly held that imposing grant conditions without statutory or constitutional authority—including conditions like those challenged here—violates the APA. *See* Mem. at 19 (citing cases); *see also Chi. v. Noem*, 2025 WL 3251222, at *7-*9; *Santa Clara*, 2025 WL 3251660, at *41. Defendants ignore these decisions.

The Challenged Conditions are also arbitrary and capricious because Defendants failed to explain why they imposed the Conditions. For example, Defendants "failed to consider an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983), apparently ignoring evidence that police assistance with federal civil immigration enforcement undermines public safety. *See* Compl. ¶ 62. Defendants respond that they need not offer an explanation because the Challenged Conditions are "not new." Opp. at 23. But 2024 COPS grants did not oppose DEI, mention section 1373, or require any other Challenged Condition. *See* Randolph Dec., Ex. 1.H at 6-42. Defendants also "ignore [] that their *interpretation* [of the law] has starkly changed." *Santa Clara*, 2025 WL 3251660, at *42; *accord, e.g.*, *CWIT*, 778 F. Supp. 3d at 984. And Defendants have imposed vastly different consequences for certifications they deem inaccurate, requiring grantees to agree that the Discrimination Condition is material under the False Claims Act while threatening treble damages lawsuits and more.

Defendants' imposition of the Challenged Conditions also ignores Plaintiffs' reliance interests. Defendants respond that Plaintiffs' only reliance interests are in violating existing law.

13

Opp. at 23. In fact, Plaintiffs' interests are in continuing to receive critical funding, received for many years and relied upon in budgets, without being subjected to unlawful conditions.

"Even if defendants were correct that there has been no change of position and plaintiffs did not have a reliance interest, it would not matter—failure to provide *any* explanation for a final agency action is arbitrary and capricious under even the most lenient standard." *Chi. v. Noem*, 2025 WL 3251222, at *7. Imposing the Challenged Conditions was thus "unlawful." *Id.*

### D.      The Immigration Condition Cannot Be Enforced.

Plaintiffs' opening brief asked the Court to stay or enjoin enforcement of the Immigration Condition because it requires compliance with section 1373, which does not preempt Plaintiffs' laws and violates the Tenth Amendment. *See* Mem. 20-23. Defendants do not dispute that section 1373 lacks preemptive effect and is unconstitutional. Defendants instead respond that even if they cannot directly enforce section 1373, they may do so indirectly though grant conditions. Opp. at 20. Defendants misconstrue Plaintiffs' point. A law that lacks preemptive effect or is unconstitutional "cannot be applied *to anyone*." *Ezell v. City of Chi.*, 651 F.3d 684, 698 (7th Cir. 2011). Defendant cannot enforce a grant condition requiring compliance with section 1373 because the statute is "a legal nullity." *Branch v. Smith*, 538 U.S. 254, 281 (2003).

### III.     The Remaining Factors Favor Preliminary Relief.

Defendants' argument that Plaintiffs have not established irreparable injury rests on the mistaken premise that Plaintiffs' harms are purely "economic." Opp. at 24. In fact, Defendants violated constitutional provisions that protect "intangible" interests, so "irreparable harm is presumed." *Ezell*, 651 F.3d at 699. Defendants also have forced Plaintiffs into a "Hobson's choice" by requiring Plaintiffs to either accept unlawful grant terms or lose millions of dollars needed to protect public safety. *City of Chi. v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017). "While

going without money is not an irreparable harm, going without [emergency responders] is." *Chi. v. Noem*, 2025 WL 3251222, at *9. And the Immigration Condition would harm police-immigrant "relationship[s]," *Chi. v. Sessions*, 321 F. Supp. 3d at 877, destroying "trust" that "would not easily be restored." *Chi. v. Sessions*, 888 F.3d at 291.

Defendants respond that Plaintiffs can avoid harm by "forego[ing]" funding. Opp. at 24. Under that view, no grant applicant could ever challenge a grant condition because they could always choose to decline the award. Plaintiffs' dilemma illustrates why this is untenable: accepting the Challenged Conditions could expose Plaintiffs to the risk of treble damages liability and worse under the current Administration's views, while refusing to do so could lead to Plaintiffs suffering the very harms Congress sought to address by funding these programs in the first place. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l*, 570 U.S. 205, 214 (2013) (affirming judgment holding that "'the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance'"); *Hous. Auth.*, 2025 WL 3187761, at *20.

The equities also favor preliminary relief. COPS grants provide critical funds to protect Plaintiffs' residents. By contrast, Defendants say that an injunction would "disrupt" their operations, Opp. at 25, but fail to explain how that is true or why it outweighs Plaintiffs' harm. Plaintiffs seek only an injunction that "prevents executive officers from enforcing select conditions that are likely unlawful and depart from the statutes enacted by the people's representatives." *Chi. v. Noem*, 2025 WL 3251222, at *10 (distinguishing cases cited by Defendants).

Dated: December 17, 2025        Respectfully submitted,

Mary B. Richardson-Lowry
Corporation Counsel of the City of Chicago

15

By: /s/ *Stephen Kane*
Stephen Kane (IL Bar No. 6272490)
Chelsey Metcalf (IL Bar No. 6337233)
Rebecca Hirsch (IL Bar No. 6279592)
Laura Geary (IL Bar No. 6351762)
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
Tel: (313) 744-9484
stephen.kane@cityofchicago.org
chelsey.metcalf@cityofchicago.org
rebecca.hirsch2@cityofchicago.org
laura.geary@cityofchicago.org

LYNDSEY OLSON
Saint Paul City Attorney

By: /s/ *Kelsey McElveen*
KELSEY MCELVEEN *
Assistant City Attorney
SAINT PAUL CITY ATTORNEY'S OFFICE
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Telephone:     (651) 266-8710
Facsimile:     (651) 298-5619
E-Mail:          Kelsey.McElveen@ci.stpaul.mn.us
*Attorneys for Plaintiff City of Saint Paul*

* Admitted pro hac vice

16