**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| CITY OF CHICAGO, CITY OF SAINT PAUL, and CITY OF SANTA MONICA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, in his official capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>Defendants. | Case No. 25-cv-13863<br><br>Hon. Jorge L. Alonso |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.       The COPS Act Created Grant Programs to Fund Community Policing. ...................... 2

    II.     DOJ Attached the Challenged Conditions to Plaintiffs' Grants. ................................ 3

    III.    The Federal Government Has Repeatedly Tried and Failed to Enforce Section 1373. .. 5

    IV.    The Department of Justice Has Threatened Civil and Criminal Penalties Against Grantees That Certify Compliance with Anti-DEI Conditions. ................................... 7

ARGUMENT .............................................................................................................. 8

    I.       The Court Has Jurisdiction. .................................................................................... 9

         A.     Plaintiffs Have Standing. ............................................................................... 9

         B.     The Tucker Act Does Not Apply. ................................................................. 11

    II.     Plaintiffs Are Entitled to Judgment as a Matter of Law. ....................................... 13

         A.     DOJ Violated the Separation of Powers (Count 1). ....................................... 13

             1.     No law authorizes the Challenged Conditions. ................................... 13

             2.     *Dalton* does not preclude Plaintiffs' claim. ....................................... 18

         B.     DOJ Acted Ultra Vires (Count 2). ................................................................ 19

         C.     DOJ Violated the Spending Clause (Count 3). .............................................. 19

              1.     The Challenged Conditions are unrelated to the grants' purposes. .... 20

             2.     The Challenged Conditions are impermissibly ambiguous. ............... 22

         D.     DOJ Violated the APA (Counts 4-6). ........................................................... 25

              1.     The Challenged Conditions are arbitrary and capricious (Count 4). .. 26

             2.     DOJ exceeded its authority and acted contrary to law (Counts 5-6). . 29

         E.     The Immigration Condition Violates the Tenth Amendment (Count 7). ......... 29

         F.     Section 1373 Imposes No Obligations (Count 8). ......................................... 31

    III.    The Court Should Award Plaintiffs' Requested Remedies. ..................................... 32

CONCLUSION ....................................................................................................... 35

## TABLE OF CASES

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023) ................................................................................. 18

*Agatha v. Trump,*
  151 F.4th 9 (1st Cir. 2025) ................................................................................... 27

*Am. Fed'n of Gov't Emps. v. Trump,*
  155 F.4th 1082 (9th Cir. 2025) .............................................................................. 8

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988) .............................................................................................. 12

*Branch v. Smith,*
  538 U.S. 254 (2003) .............................................................................................. 31

*Brown v. Kemp,*
  86 F.4th 745 (7th Cir. 2023) ................................................................................... 9

*California v. HHS,*
  811 F. Supp. 3d 183 (D. Mass. 2025) .................................................................... 24

*California v. Mullin,*
  2026 WL 1649160 (D. Mass. June 8, 2026) ......................................................... 19

*California v. U.S. Dep't of Transp.,*
  808 F. Supp. 3d 291 (D.R.I. 2025) ........................................................................ 20

*Camp v. Pitts,*
  411 U.S. 138 (1973) ................................................................................................ 8

*Chamber of Com. v. Reich,*
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................................... 27

*Chi. Women in Trades v. Trump,*
  778 F. Supp. 3d 959 (N.D. Ill. 2025) ....................................................... 12, 19, 33

*Citizens Against Ruining Env't v. EPA,*
  535 F.3d 670 (7th Cir. 2008) ................................................................................... 8

*City & County of San Francisco v. DOJ,*
  822 F. Supp. 3d 1056 (N.D. Cal. 2026) .................................. 2, 12, 13, 15, 18, 25, 29, 35

*City & County of San Francisco v. Sessions,*
  349 F. Supp. 3d 924 (N.D. Cal. 2018) ............................................................ 20, 23, 29

*City of Chicago v. Barr,*
  405 F. Supp. 3d 748 (N.D. Ill. 2019) ...................................................................... 5

*City of Chicago v. Barr,*
  513 F. Supp. 3d 828 (N.D. Ill. 2021) ..................................................................... 30

*City of Chicago v. Barr,*
  961 F.3d 882 (7th Cir. 2020) .................................. 5, 11, 13, 16, 17, 19, 20, 26, 30, 33, 35

*City of Chicago v. DHS*,
2025 WL 3171302 (N.D. Ill. Nov. 13, 2025) ................................................................. 32

*City of Chicago v. DHS*,
815 F. Supp. 3d 727 (N.D. Ill. 2025) ............................................................. 12, 19, 26

*City of Chicago v. Noem*,
2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) ........................... 9, 11, 13, 15, 18, 25, 27, 28

*City of Chicago v. Sessions*,
264 F. Supp. 3d 933 (N.D. Ill. 2017) ......................................................................... 33

*City of Chicago v. Sessions*,
321 F. Supp. 3d 855 (N.D. Ill. 2018) ................................................................ 5, 30, 34

*City of Chicago v. Sessions*,
888 F.3d 272 (7th Cir. 2018) ......................................................................... 10, 34, 35

*City of Evanston v. Barr*,
412 F. Supp. 3d 873 (N.D. Ill. 2019) ........................................................................ 33

*City of Fresno v. Mullin*,
2026 WL 1998576 (N.D. Cal. July 9, 2026) ............................ 2, 12, 15, 18, 22, 24, 25

*City of Fresno v. Turner*,
2025 WL 2721390 (N.D. Cal. Sept. 23, 2025) ........................................................... 33

*City of Los Angeles v. Barr*,
929 F.3d 1163 (9th Cir. 2019) ................................................................................. 16

*City of Los Angeles v. Sessions*,
2019 WL 1957966 (C.D. Cal. Feb. 15, 2019) ............................................................ 29

*City of Philadelphia v. Sessions*,
309 F. Supp. 3d 289 (E.D. Pa. 2018) ........................................................................ 29

*City of Seattle v. Trump*,
2026 WL 1862024 (W.D. Wash. June 29, 2026) ........................................................ 16

*Clinton v. City of New York*,
524 U.S. 417 (1998) ................................................................................................ 27

*Colorado v. DOJ*,
455 F. Supp. 3d 1034 (D. Colo. 2020) ...................................................................... 20

*Cook County v. Wolf*,
498 F. Supp. 3d 999 (N.D. Ill. 2020) ........................................................................ 32

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ................................................................................................ 32

*County of Santa Clara v. Noem*,
815 F. Supp. 3d 979 (N.D. Cal. 2025) ...................................................................... 13

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
698 F.3d 1101 (9th Cir. 2012) ................................................................................... 8

iv

*Dalton v. Specter*,
  511 U.S. 462 (1994) ............................................................................................. 18, 19

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ..................................................................................................... 25

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025) ..................................................................................................... 12

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006) ..................................................................................................... 33

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ....................................................................................... 31

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ..................................................................................................... 26

*Freedom Network USA v. Trump*,
  2026 WL 1899186 (N.D. Ill. Mar. 23, 2026) ............................... 11, 15, 18, 19, 22, 23, 28

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) ................................................................................................. 18, 30

*Hous. Auth. of City & Cnty. of S.F. v. Turner*,
  2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) ..................................................... 18, 22, 28

*Illinois v. FEMA*,
  801 F. Supp. 3d 75 (D.R.I. 2025) ............................................................. 13, 20, 23, 27, 32

*In re United Mine Workers*,
  190 F.3d 545 (D.C. Cir. 1999) ..................................................................................... 27

*Johnson v. U.S. Off. of Pers. Mgmt.*,
  783 F.3d 655 (7th Cir. 2015) ....................................................................................... 32

*La. Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ..................................................................................................... 18

*Lincoln v. Vigil*,
  508 U.S. 182 (1993) ................................................................................................. 25, 26

*Massachusetts v. Nat'l Insts. of Health*,
  164 F.4th 1 (1st Cir. 2026) ........................................................................................... 12

*Massachusetts v. U.S. Dep't of Agric.*,
  2026 WL 1815807 (D. Mass. June 24, 2026) ......................................................... 24, 25

*McHenry County v. Raoul*,
  44 F.4th 581 (7th Cir. 2022) ........................................................................................ 31

*Michigan v. Noem*,
  819 F. Supp. 3d 1163 (D. Or. 2025) ............................................................................. 33

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ....................................................................................................... 26

*Murphy Co. v. Biden*,
    65 F.4th 1122 (9th Cir. 2023) ...................................................................... 19

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ...................................................................... 29, 30, 31

*Nat'l Ass'n of Diversity Officers v. Trump*,
    167 F.4th 86 (4th Cir. 2026) ...................................................................... 16

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    145 S. Ct. 2658 (2025) ...................................................................... 12

*Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*,
    145 F.3d 1399 (D.C. Cir. 1998) ...................................................................... 33

*Nebraska v. Su*,
    121 F.4th 1 (9th Cir. 2024) ...................................................................... 27

*New Mexico v. Musk*,
    824 F. Supp. 3d 80 (D.D.C. 2026) ...................................................................... 19

*New York v. Trump*,
    171 F.4th 1 (1st Cir. 2026) ...................................................................... 25, 26

*New York v. Trump*,
    811 F. Supp. 3d 215 (D. Mass. 2025) ...................................................................... 27

*New York v. United States*,
    505 U.S. 144 (1992) ...................................................................... 20

*Nken v. Holder*,
    556 U.S. 418 (2009) ...................................................................... 35

*Ohio v. EPA*,
    603 U.S. 279 (2024) ...................................................................... 26

*Oregon v. Trump*,
    406 F. Supp. 3d 940 (D. Or. 2019) ...................................................................... 29

*Pacito v. Trump*,
    169 F.4th 895 (9th Cir. 2026) ...................................................................... 35

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ...................................................................... 22, 24

*Prymer v. Ogden*,
    29 F.3d 1208 (7th Cir. 1994) ...................................................................... 31

*Robbins v. Reagan*,
    780 F.2d 37 (D.C. Cir. 1985) ...................................................................... 14

*Rueda Vidal v. DHS*,
    536 F. Supp. 3d 604 (C.D. Cal. 2021) ...................................................................... 8

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*,
    547 U.S. 47 (2006) ...................................................................... 9

vi

*S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp.
3d 1184 (N.D. Cal. 2025)......................................................................................... 16

*Scherr v. Marriott Int'l*,
703 F.3d 1069 (7th Cir. 2013) ................................................................................ 15

*South Dakota v. Dole*,
483 U.S. 203 (1987).................................................................................................. 19

*Sweeney v. Raoul*,
990 F.3d 555 (7th Cir. 2021) .................................................................................... 9

*United States v. Colorado*,
2026 WL 878882 (D. Colo. Mar. 31, 2026) ........................................................... 29

*United States v. Illinois*,
796 F. Supp. 3d 494 (N.D. Ill. 2025) ........................................... 6, 23, 29, 31, 32

*United States v. Illinois*,
No. 25-1285 (N.D. Ill.) .............................................................................................. 6

*United States v. Illinois*,
No. 25-2904 (7th Cir.)................................................................................................. 6

*United States v. Minnesota*,
No. 25-3798 (D. Minn.) ............................................................................................. 6

*Washington v. HHS*,
2025 WL 3002366 (D. Or. Oct. 27, 2025) ............................................................. 23

*Washington v. U.S. Dep't of Educ.*,
813 F. Supp. 3d 1222 (W.D. Wash. 2025).............................................................. 8

vii

**INTRODUCTION**

Congress passed the Public Safety Partnership and Community Policing Act ("COPS Act") to improve public safety by enhancing cooperation between local police and the communities they serve. Congress has appropriated billions of dollars under the COPS Act, directing the Department of Justice to award grants to local governments to hire more police officers for deployment in community-oriented policing, among other purposes. In 2025, however, Defendants (together, "DOJ") added new conditions that fundamentally transform the grants. DOJ now demands that grantees certify that they comply with an immigration-related statute, 8 U.S.C. § 1373; do not operate "any" program "having components relating to diversity, equity, and inclusion" ("DEI") that DOJ deems unlawful; and will comply with all executive orders. DOJ also for the first time restricted grantees from using COPS funds to "promote gender ideology" or for other disfavored purposes. DOJ added these conditions and restrictions (the "Challenged Conditions") while at the same time suing two Plaintiffs for allegedly violating 8 U.S.C. § 1373 and announcing their intent to sue grantees for treble damages under the False Claims Act based on anti-DEI certifications.

This Court preliminarily enjoined DOJ from imposing the Challenged Conditions. The Court concluded that DOJ likely violated the Constitution and APA because Congress did not authorize DOJ to impose the Challenged Conditions, and the Conditions do not reasonably relate to—and in fact undermine—the COPS Act's purpose. In doing so, the Court joined "numerous" courts that "granted preliminary injunctions in similar cases." R. 28 at 3 & n.1 (citing cases).

DOJ now moves for summary judgment. DOJ "acknowledge[s]," however, that its motion repeats "many" of the same arguments that the Court rejected in its preliminary-injunction order, so that the order "likely control[s] the result, should the court adhere to its prior reasoning." R. 54 ("Mem.") at 6. On that point, the parties agree. The administrative record—which is largely

1

comprised of documents that were before the Court at the preliminary-injunction stage—does not materially change the facts. And the law has only gotten worse for DOJ, with two more courts preliminarily enjoining some of the same COPS grant conditions that are at issue here. *City & County of San Francisco v. DOJ*, 822 F. Supp. 3d 1056 (N.D. Cal. 2026); *City of Fresno v. Mullin*, 2026 WL 1998576 (N.D. Cal. July 9, 2026). The Court should therefore deny DOJ's motion and enter judgment for Plaintiffs, enabling Plaintiffs to use COPS grants for the purpose that Congress intended—to protect public safety, free from unlawful conditions.

## BACKGROUND

### I.      The COPS Act Created Grant Programs to Fund Community Policing.

The COPS Act directs the Attorney General to award grants to local governments and others for specified purposes. 34 U.S.C. § 10381(a). Those purposes include "to hire and train" law enforcement officers "for deployment in community-oriented policing," *id.* § 10381(b)(2); "provide specialized training to law enforcement officers to … properly interact with individuals who have a mental illness," *id.* § 10381(b)(19); and otherwise "enhance the ability of law enforcement agencies to address the mental health, behavioral, and substance abuse problems of individuals encountered by law enforcement officers," *id.* § 10381(b)(20).

The COPS Office within DOJ administers three programs that are at issue here. First, the Hiring Program "advanc[es] public safety through community policing by funding additional full-time career law enforcement positions." Administrative Record ("AR") at 1. Second, the Community Policing Development Microgrant ("Microgrant") Program "develop[s] law enforcement's community policing capacity" in areas such as "homelessness and squatting." AR at 43. Third, the Safer Outcomes: Enhancing De-Escalation and Crisis Response Training for Law Enforcement – Support for Law Enforcement Agencies ("Safer Outcomes") Program funds training "to promote safe outcomes during police encounters with persons in crisis." AR at 82.

2

Plaintiffs have long relied on COPS grants to protect their communities. For example, the Chicago Police Department has received more than $212 million from 13 COPS grants awarded since 2009, helping pay for 515 entry-level police officer positions. R. 12-2 ¶ 7. These officers have focused on targeting violent crime by developing stronger relationships with community members and thereby encouraging police-resident collaboration. *Id.* ¶¶ 8–10. The Saint Paul Police Department has likewise received millions of dollars in COPS grants to, among other purposes, hire police officers and provide them with mental-health resources. R. 12-3 ¶ 12. The Santa Monica Police Department has received COPS funds too, enabling the department to provide its officers with mental-health services and training to handle stress. R. 40-1 ¶ 8.

## II.     DOJ Attached the Challenged Conditions to Plaintiffs' Grants.

In March 2025, Congress passed the Full-Year Continuing Appropriations and Extensions Act, allocating more than $417 million to the COPS Office. *See* Pub. L. No. 119-4, Div. A Tit. III § 1301(5), 139 Stat. 9 (2025). Pursuant to that appropriation, the COPS Office disseminated Notices of Funding Opportunity for COPS grants in May 2025. *See* AR at 1–111.

The Chicago Police Department applied for a Hiring Program grant, requesting $6.25 million to pay the salaries and fringe benefits of 50 police officers. AR at 198, 220. The Saint Paul Police Department applied for a Microgrants Program grant to support a "Downtown Homelessness Initiative" that would help officers work with unhoused people to decrease quality-of-life offenses. AR at 257, 259. The Santa Monica Police Department applied for a Safer Outcomes Program grant to fund training in de-escalation tactics, alternatives to the use of force, and tools to safely respond to individuals experiencing a mental-health crisis. AR at 337–38.

The COPS Office approved Plaintiffs' applications and awarded them grants. AR at 240, 318, 371. The grants include three identical conditions that Plaintiffs challenge here:

3

- The "Immigration Condition" provides, in part: "local government entity recipients of this award … must comply with 8 U.S.C. § 1373, which provides that such entities may not prohibit, or in any way restrict, any government entity or official from sending to, receiving from, maintaining, or exchanging information regarding citizenship or immigration status, lawful or unlawful, of any individual with" any "federal, state or local government entity." *E.g.*, AR at 245.

- The "Anti-DEI Condition" requires each Plaintiff to "certif[y] that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws." *Id.* The Condition also requires Plaintiffs to agree that their "compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for the purposes of the False Claims Act." *Id.*

- The "Executive Order Condition" requires Plaintiffs to "comply with all applicable federal laws and Presidential Memoranda and all Executive Orders by the President." *Id.*

In addition, the Notices of Funding Opportunity include "Federal Funding Restrictions." *E.g.*, AR at 15. Those Restrictions prohibit Plaintiffs from using COPS funds (1) to "directly or indirectly" support schools that require students to receive a COVID-19 vaccination; (2) to "promote gender ideology"; (3) for "projects that provide or advance diversity, equity, inclusion, and accessibility, or environmental justice programs, services, or activities"; and (4) if they "failed to protect public monuments, memorials, and statues." *Id.*

4

### III.     The Federal Government Has Repeatedly Tried and Failed to Enforce Section 1373.

The Immigration Condition implicates local laws that limit the circumstances under which officers devote their scarce resources to assisting the federal government in enforcing federal civil immigration law. *See* Mun. Code of Chi. ("MCC") § 2-173-020(a); St. Paul Admin. Code Ch. 44.01; Santa Monica Res. No. 11028. Plaintiffs' laws seek to build trust between police and immigrant communities, thereby encouraging cooperation with police and promoting public safety. The Chicago City Council explained that directing local police to enforce federal civil immigration law would "chill[]" effective law enforcement because "fear of deportation" would lead "witnesses and victims" to avoid cooperation with police. Kane Dec., Ex. A at 74327; *see* MCC § 2-173-005. Studies, corroborated by local police experience, confirm that immigration-related fears prevent witnesses, victims, and others from reporting crimes. *See, e.g.*, Kane Dec., Exs. B–D.

President Trump has nevertheless long sought to enforce 8 U.S.C. § 1373. During his first term, DOJ inserted a section 1373 certification condition in Byrne JAG grants, which provide federal funding to support local law enforcement. *See City of Chicago v. Barr*, 961 F.3d 882, 888 (7th Cir. 2020). Chicago sued to challenge the section 1373 certification and other conditions. The district court granted summary judgment for Chicago, holding that section 1373 "is unconstitutional under the [Tenth Amendment's] anticommandeering doctrine, and accordingly, the § 1373 compliance condition is *ultra vires* as the [Attorney] General lacks authority to demand compliance with an unconstitutional statute." *City of Chicago v. Barr*, 405 F. Supp. 3d 748, 762 (N.D. Ill. 2019); *accord City of Chicago v. Sessions*, 321 F. Supp. 3d 855 (N.D. Ill. 2018). The Seventh Circuit affirmed the judgment, holding that Congress did not authorize the Attorney General to condition Byrne JAG grants on compliance with section 1373. *See Chi. v. Barr*, 961 F.3d at 931.

On the first day of his second term, President Trump issued an executive order titled "Protecting the American People Against Invasion." Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). The executive order directed the Attorney General to take "any lawful actions to ensure that so-called 'sanctuary' jurisdictions … do not receive access to Federal funds." *Id.* § 17. The order also directed the Attorney General to "undertake any other lawful actions, criminal or civil, that [the Attorney General] deem[s] warranted" against "sanctuary" jurisdictions. *Id.*

In February 2025, then-Attorney General Bondi sent a memo ("Bondi Memo") to all DOJ employees stating: "Sanctuary jurisdictions should not receive access to federal grants administered by [DOJ]." Kane Dec., Ex. E at 1. The Bondi Memo defined "sanctuary jurisdictions" to include "jurisdictions that refuse to comply with 8 U.S.C. § 1373 [or] refuse to certify compliance with § 1373." *Id.* at 2. The Memo mandated that DOJ "shall investigate" state and local actors for potential prosecution under section 1373 and other laws. *Id.* at 3.

DOJ later sued Chicago and others. *See United States v. Illinois*, No. 25-1285 (N.D. Ill.). The complaint alleged that section 1373 preempts provisions in Chicago's Welcoming City Ordinance stating that city employees may not, subject to exceptions, (a) "expend their time responding to ICE inquiries … regarding a person's custody status, release date, or contact information," or (b) "request, maintain, or share the citizenship or immigration status of any person." *Id.*, ECF No. 1 ¶ 66. The district court dismissed DOJ's lawsuit against Chicago, agreeing with courts that "have uniformly found" that section 1373 does not preempt local laws. *United States v. Illinois*, 796 F. Supp. 3d 494, 520 (N.D. Ill. 2025). DOJ appealed. *See United States v. Illinois*, No. 25-2904 (7th Cir.). DOJ filed a similar lawsuit against Saint Paul and others, which is pending. *See United States v. Minnesota*, No. 25-3798 (D. Minn.).

6

Finally, President Trump issued an executive order asserting that "some State and local officials … violate, obstruct, and defy the enforcement of Federal immigration laws," which the order called "a lawless insurrection" that "often violate[s] Federal criminal laws." Exec. Order No. 14287 § 1, 90 Fed. Reg. 18761, *Protecting American Communities from Criminal Aliens* (Apr. 28, 2025). The executive order directed the Attorney General to publish a list of so-called "sanctuary jurisdictions" and "pursue all necessary legal remedies and enforcement measures" against those jurisdictions. *Id.* §§ 2, 3(b). The Attorney General later published a list of so-called "sanctuary jurisdictions" that includes Chicago, California, and Minnesota. *See* Kane Dec., Ex. F.

**IV.     The Department of Justice Has Threatened Civil and Criminal Penalties Against Grantees That Certify Compliance with Anti-DEI Conditions.**

In an executive order titled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" ("Anti-DEI Order"), President Trump directed agencies to add anti-DEI conditions in all grants. AR at 771. The Anti-DEI Order required the Director of the Office of Management and Budget ("OMB") to "[e]xcise references to DEI and DEIA principles" from federal grants to, among other reasons, "comply with civil-rights laws." *Id.* It also directed the OMB Director to "[t]erminate all" programs related to "'diversity,' 'equity,' 'equitable decision-making,'" or "advancing equity," as "appropriate," without regard to whether the programs violate federal law. *Id.* According to the then-Attorney General, the anti-DEI Order "mak[es] clear" that DEI policies "'violate the text and spirit of our … Federal civil-rights laws.'" Kane Dec., Ex. G at 1.

In May 2025, then-Deputy Attorney General Blanche announced an initiative to "utilize the False Claims Act to … pursue claims against any recipient of federal funds that knowingly violates federal civil rights laws." Kane Dec., Ex. H at 2. The memo asserted that the False Claims Act—which permits treble damages, 31 U.S.C. § 3729(a)(1)—is "implicated whenever federal-funding recipients … certify compliance with civil rights laws" while knowingly engaging in DEI

7

programs "that assign benefits or burdens on race, ethnicity, or national origin." Kane Dec., Ex. H at 1. The memo explained that the initiative includes DOJ's Criminal Division. *Id.* at 2. In a press release announcing the initiative, the then-Attorney General warned that grantees that "promote divisive DEI policies are putting their access to federal funds at risk." *Id.*, Ex. I at 1.

DOJ has already initiated investigations for allegedly unlawful DEI. For example, DOJ sent a letter to Chicago's Mayor announcing "an investigation to determine whether [Chicago] is engaged in a pattern or practice of discrimination based on race, in violation of Title VII." *Id.*, Ex. J at 1. The letter stated that the investigation "is based on" the Mayor's alleged remarks highlighting "the number of Black officials in [his] administration." *Id.*; *see also id.*, Exs. K–L.

## ARGUMENT

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving APA claims, "the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Court should, however, consider evidence outside the administrative record in deciding whether Plaintiffs have standing, *see Citizens Against Ruining Env't v. EPA*, 535 F.3d 670, 675 (7th Cir. 2008), and face "irreparable harm," *Washington v. U.S. Dep't of Educ.*, 813 F. Supp. 3d 1222, 1233 (W.D. Wash. 2025). The Court may also do so in deciding whether DOJ "considered all the relevant factors" in promulgating the Challenged Conditions for purposes of Plaintiffs' APA claim, *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1123 n.14 (9th Cir. 2012), and in resolving Plaintiffs' constitutional and ultra vires claims. *See Am. Fed'n of Gov't Emps. v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025); *Rueda Vidal v. DHS*, 536 F. Supp. 3d 604, 612–13 (C.D. Cal. 2021).

I. **The Court Has Jurisdiction.**

A. **Plaintiffs Have Standing.**

DOJ argues that Plaintiffs lack standing as to some Challenged Conditions. Mem. at 6. The Court rejected that argument at the preliminary-injunction stage, holding that "Plaintiffs have established pre-enforcement standing." R. 28 at 4. For pre-enforcement standing, Plaintiffs need only show "'an intention to engage in a course of conduct arguably affected'" by the challenged provision and "'a credible threat of prosecution thereunder.'" *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). A plaintiff need not "confess that her intended conduct will actually violate the statute in question if enforcement is likely." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023).

DOJ first contends that Plaintiffs lack standing to challenge the Immigration Condition because Plaintiffs' grant applications certified compliance with section 1373. Mem. at 7. In fact, as DOJ conceded at the preliminary-injunction hearing, R. 49 at 13, Saint Paul submitted an addendum to its application stating that it "cannot agree" to the section 1373 certification. AR at 287–88. Saint Paul thus has standing to challenge the Immigration Condition even under DOJ's view. And because Article III is satisfied if just "one party" has standing, *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006), the Court need go no further.

Regardless, DOJ's argument does not implicate Plaintiffs' standing at all. DOJ does not dispute the Court's conclusion that Plaintiffs' conduct is "'arguably affected'" by the Immigration Condition, and that there is a "'credible threat'" that DOJ will sue Plaintiffs for violating the Condition. R. 28 at 4–5. No more is required to establish standing. *See City of Chicago v. Noem*, 2025 WL 3251222, at *3–4 (N.D. Ill. Nov. 21, 2025), *appeal filed*, No. 26-1103 (7th Cir.).

Further refuting DOJ's theory, courts have enjoined agencies from enforcing conditions in grants that plaintiffs already signed. *E.g.*, *id.* at *10 n.14. Plaintiffs thus have standing to seek the lesser remedy of enjoining DOJ from enforcing conditions "similar" to the Immigration Condition

9

in Plaintiffs' "applications." R. 39, Prayer ¶ 4. Moreover, executing COPS grants risks additional consequences: treble damages in an amount tied to the funds received. *See* AR at 233. Therefore, nothing in Plaintiffs' applications could affect Plaintiffs' standing to challenge the Immigration Condition in Plaintiffs' grants. *See City of Chicago v. Sessions*, 888 F.3d 272, 289 (7th Cir. 2018) (holding that Chicago had standing to challenge immigration-related grant conditions). In all events, Plaintiffs' application certifications could not affect Plaintiffs' standing to obtain a declaration that the Immigration Condition imposes no obligations.

DOJ also argues that Plaintiffs lack standing to challenge the Federal Funding Restrictions because Plaintiffs do not allege that they will use COPS funds for restricted purposes. Mem. at 7. The Federal Funding Restrictions are ambiguous for reasons described below, making it impossible for Plaintiffs to know if DOJ will deem Plaintiffs' conduct to be unlawful. To the extent that the Restrictions are decipherable, however, they arguably affect Plaintiffs' conduct:

- Grantees cannot use COPS funds to "directly or indirectly support" schools that require Covid vaccinations. AR at 15. Police officers serve "all people," Kapustainyk Dec., Ex. B § III.A, so they do not ask about school vaccination policies before rendering assistance. Plaintiffs thus could "support" schools that require Covid vaccinations by helping people in or near those schools.

- Grantees cannot use COPS funds to "promote gender ideology." AR at 15. Chicago generally prohibits restricting access to bathrooms based on gender identity, MCC § 6-10-070, and its police officers must use a person's preferred name and pronouns. Kapustainyk Dec., Ex. A § IV; *see also* Saint Paul Res. 18-1006; Santa Monica Ord. 2745.

10

- Grantees cannot use COPS funds to "provide or advance [DEI] and accessibility, or environmental justice programs, services, or activities." AR at 15. As the Court observed, "Chicago and Saint Paul operate programs that provide DEI support." R. 28 at 5. For example, the Chicago Police Department's Equity Action Plan seeks to "increase diversity" by "aiming for 30% of police recruits to be women by 2030." Milstein Dec., Ex. A at 21; *see also* MCC § 2-4-100. Santa Monica's Equity Action Plan likewise seeks to "[r]ecruit and promote a diverse and representative police force," Cline Dec., Ex. A at 21, while its police department engages in marketing designed to attract racially and culturally diverse officers. Jacob Dec. ¶ 11.

- The Restrictions prohibit COPS funding for grantees "that have failed to protect public monuments, memorials, and statues from destruction or vandalism." AR at 15. Vandals have damaged public statues in Chicago and Saint Paul. Kane Dec., Exs. M–N.

**B.     The Tucker Act Does Not Apply.**

DOJ argues that the Tucker Act gives the Court of Federal Claims exclusive jurisdiction "to the extent that Plaintiffs are seeking to enforce an obligation to pay money" because any such claims would be "'founded'" on a contract. Mem. at 8 (quoting 28 U.S.C. § 1491(a)(1)). The Court rejected that argument at the preliminary-injunction stage, observing that "'courts have found with near or total uniformity that the district courts have jurisdiction over … constitutional and APA claims seeking an injunction against the imposition of allegedly unlawful grant conditions.'" R. 28 at 7; *accord, e.g.*, *Freedom Network USA v. Trump*, 2026 WL 1899186, at *9 (N.D. Ill. Mar. 23, 2026); *Chi. v. Noem*, 2025 WL 3251222, at *4–5; *cf. Chi. v. Barr*, 961 F.3d 882 (enjoining grant conditions without addressing Tucker Act). Other courts likewise rejected DOJ's argument in cases challenging some of the same conditions that are at issue here, *S.F. v. DOJ*, 822 F. Supp. 3d at

11

1064–65, declining to disturb this "'wall of authority.'" *Fresno v. Mullin*, 2026 WL 1998576, at *34.

The Tucker Act applies "only when the claim is 'at its essence' a contract claim." *Chi. Women in Trades v. Trump* (*CWIT*), 778 F. Supp. 3d 959, 980 (N.D. Ill. 2025), *appeal filed*, No. 25-2144 (7th Cir.). "To determine the essence of an action, a court looks at 'both the source of the rights upon which the plaintiff bases its claims, and ... the type of relief sought (or appropriate).'" *Id.* Plaintiffs base their claims on the Constitution and the APA, not on any contract. And contrary to DOJ's suggestion that Plaintiffs seek "to enforce an obligation to pay money," Plaintiffs request only declaratory and injunctive relief. *See* R. 39, Prayer. These are remedies that the Court of Federal Claims "cannot grant and that therefore belong in district court." *City of Chicago v. DHS*, 815 F. Supp. 3d 727, 749 (N.D. Ill. 2025); *see Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988) (Court of Federal Claims "has no power to grant" equitable relief).

As this Court recognized, exercising jurisdiction here is "consistent with" decisions declining jurisdiction over APA claims challenging grant terminations. R. 28 at 7 (citing *Nat'l Insts. of Health v. Am. Pub. Health Ass'n* (*NIH*), 145 S. Ct. 2658 (2025)); *see also Dep't of Educ. v. California*, 604 U.S. 650 (2025). Unlike backward-looking grant-termination suits, Plaintiffs seek prospective relief prohibiting DOJ from inserting unlawful grant conditions. Moreover, *NIH* concluded that district courts likely have jurisdiction over challenges to "policies related to grants." 145 S. Ct. at 2661 (Barrett, J., concurring). Plaintiffs challenge DOJ's policy decision to adopt the Challenged Conditions, independently giving the Court jurisdiction over Plaintiffs' claims. *See Massachusetts v. Nat'l Insts. of Health*, 164 F.4th 1, 10–12 (1st Cir. 2026).

12

II.     **Plaintiffs Are Entitled to Judgment as a Matter of Law.**

A.      **DOJ Violated the Separation of Powers (Count 1).**

Count I alleges that DOJ violated the constitutional separation of powers by imposing the Challenged Conditions. R. 39 ¶¶ 157–67. The Constitution gives "authority to pass laws and the power of the purse [to] the legislative not the executive branch." *Chi. v. Barr*, 961 F.3d at 892. The "use of extra-statutory conditions on federal grant awards as a tool to obtain compliance with [the executive's] policy objectives" usurps Congress's "power of the purse" and "strikes at the heart of … the separation of powers." *Id.* This Court held that DOJ likely violated the separation of powers because Congress did not authorize the Challenged Conditions. R. 28 at 8–12; *see S.F. v. DOJ*, 822 F. Supp. 3d at 1067 ("the government has failed to identify any constitutional or statutory provision that authorized the COPS Office to impose the Challenged Conditions"). DOJ responds by repeating arguments that this Court already rejected. DOJ's arguments fare no better now.

1.      **No law authorizes the Challenged Conditions.**

DOJ suggests that the COPS Act authorizes the Challenged Conditions by permitting DOJ to (a) prescribe the form and content of grant applications and (b) "promulgate regulations and guidelines to carry out this subchapter." Mem. at 9 (citing 34 U.S.C. §§ 10382(b), 10388). The Court rejected that suggestion at the preliminary-injunction stage, R. 28 at 8–9, consistent with courts that have enjoined grant conditions imposed under programs whose authorizing statutes provide substantively identical authority. *E.g.*, *Chi. v. Noem*, 2025 WL 3251222, at *5 (discussing 15 U.S.C. § 2229a(b)(2); 46 U.S.C. § 70107(i)(1)); *County of Santa Clara v. Noem*, 815 F. Supp. 3d 979, 992–95 (N.D. Cal. 2025) (same); *Illinois v. FEMA*, 801 F. Supp. 3d 75, 81 (D.R.I. 2025).

As for section 10382(b), DOJ's authority over grant applications is largely irrelevant; this case focuses on the grants themselves. Regardless, as the Court noted, "the authority to prescribe the application's 'form' does not allow the DOJ to impose substantive conditions." R. 28 at 9.

13

Moreover, "Congress listed the required 'contents' of the applications," and "the list does not mention immigration, anti-DEI, gender ideology, environmental justice, or any other issues related to the Challenged Conditions." *Id.* (citing 34 U.S.C. § 10382(c)).

As for section 10388, it authorizes regulations only as necessary "to carry out" the COPS Act. The Act identifies the purposes for which DOJ may award grants. 34 U.S.C. § 10381(b); *see also id.* § 10381(c). Those purposes, this Court observed, "are largely related to enhancing cooperation between law enforcement agencies and their local communities." R. 28 at 9. "The purposes do not involve immigration, anti-DEI, gender ideology, environmental justice, or any other issues related to the Challenged Condition." *Id.* And DOJ "do[es] not explain how the Challenged Conditions are necessary 'to carry out' the COPS Act." *Id.*

Where, as here, "Congress limits the purpose for which a grant can be made, it can be presumed that it intends that the dispersing agency make its allocations based on factors solely related to the goal of implementing the stated statutory purposes in a reasonable fashion, rather than taking irrelevant or impermissible factors into account." *Robbins v. Reagan*, 780 F.2d 37, 48 (D.C. Cir. 1985). By contrast, Congress knows how to broadly authorize agencies to impose grant conditions when it wishes to do so. *E.g.*, 42 U.S.C. § 10305(a)(2) (agency "may establish any condition" that it "considers to be in the best interest of the Nation"). As this Court stated, "Congress' failure to give broad authorization in the COPS Act further demonstrates that Congress did not authorize the Challenged Conditions." R. 28 at 9.

DOJ's Condition-specific arguments also fail to establish proper authority:

***Anti-DEI Condition***. DOJ argues that Title VI's prohibition on discrimination authorizes the Anti-DEI Condition. Mem. at 10–12. That argument fails for three independent reasons.

14

First, this Court concluded that "the Anti-DEI Condition 'does not simply require that grant recipients comply with federal antidiscrimination laws.'" R. 28 at 11. "Rather, the Anti-DEI Condition advances the 'Administration's own interpretation of 'discrimination,'" which "is 'inconsistent with well-established legal precedent.'" *Id.* (citing *City of Seattle v. Trump*, 808 F. Supp. 3d 1204, 1216–18 (W.D. Wash. 2025) (providing examples)); *accord Freedom Network*, 2026 WL 1899186, at *17. Supporting the Court's conclusion, the grants separately require compliance with Title VI. AR at 246. There would be no need for the Anti-DEI Condition if DEI programs violate Title VI. *See Scherr v. Marriott Int'l*, 703 F.3d 1069, 1078 (7th Cir. 2013) ("we do not construe regulations in such a way as to render other provisions of the regulations … superfluous").

In fact, the Anti-DEI Condition contradicts the COPS Act's requirement that grant applicants "provide assurances" that they "will, to the extent practicable, seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks within the sworn positions in the law enforcement agency." 34 U.S.C. § 10382(c)(11); *see id.* § 10381(p) (defining COPS Pipeline Partnership eligible entities to include a "Hispanic-serving institution," "historically Black college or university," and "Tribal college"). This "stark conflict" between the Anti-DEI Condition and the COPS Act is a "sure sign" that DOJ acted unlawfully. *S.F. v. DOJ*, 822 F. Supp. 3d at 1066; *see Fresno v. Mullin*, 2026 WL 1998576, at *22 ("the DEI Conditions in the COPS … grants likely conflict with Congress's purposes").

Second, Title VI is limited to programs "receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI thus does not authorize DOJ "to police recipients' conduct outside federally funded activities." *Chi. v. Noem*, 2025 WL 3251222, at *8. Yet the Anti-DEI Condition applies to "any" program operated by grantees, including programs that are not federally funded. AR at 245.

15

As DOJ has conceded, therefore, the Anti-DEI Condition goes "beyond" any authority provided by Title VI. R. 49 at 26–28.

Third, the Anti-DEI Condition requires grantees to agree their certification is "material" under the False Claims Act. AR at 245. Title VI does not permit DOJ to demand that grantees waive an element of a claim under a non-discrimination law.

*San Francisco A.I.D.S. Foundation v. Trump*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025), and *National Ass'n of Diversity Officers v. Trump*, 167 F.4th 86 (4th Cir. 2026), cited by DOJ, did not address the issue here: whether agencies have authority to insert anti-DEI conditions. Rather, those cases addressed facial First Amendment challenges to anti-DEI executive orders. "This case is materially different" because it challenges DOJ actions "implementing" those orders. *City of Seattle v. Trump*, 2026 WL 1862024, at *9 (W.D. Wash. June 29, 2026).

**Immigration Condition**. DOJ cites *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019), as support for the Immigration Condition. Mem. at 19. But as this Court held, *L.A. v. Barr* "is distinguishable." R. 28 at 11. Clarifying that the case did not involve "conditions o[n] receiving a grant," the *L.A. v. Barr* majority applied a "highly deferential standard" under the since-discarded *Chevron* doctrine in holding only that DOJ could award extra points to certain COPS applicants, putting others at a "slight competitive disadvantage." 929 F.3d at 1174, 1177. Even on that "limited" issue, *id.* at 1174, Plaintiffs submit that the dissent and district court correctly found that "DOJ exceeded its delegated powers" under the COPS Act. *Id.* at 1191 (Wardlaw, J. dissenting).

As this Court stated, *Chicago v. Barr* is "more on point than *L.A. v. Barr*." R. 28 at 11. In *Chicago v. Barr*, the Seventh Circuit held that DOJ violated the separation of powers by imposing a section 1373 certification condition on Byrne JAG grants. 961 F.3d at 902. To be sure, unlike the

16

formula grants at issue in *Chicago v. Barr*, COPS grants are awarded on a competitive basis. But much of the Seventh Circuit's reasoning applies equally to competitive grants.

For example, the Seventh Circuit cited Congress's repeated rejection of bills "'seeking to condition federal funding on compliance with 8 U.S.C. § 1373,'" *id.*, including failed attempts to condition COPS funding. *E.g.*, *Enforce the Law for Sanctuary Cities Act*, H.R. 3009, 114th Cong. § 3 (2015). As in *Chicago v. Barr*, interpreting the COPS Act to authorize the Immigration Condition would "allow the Executive Branch to override Congress' refusal to endorse § 1373 compliance and would effectively 'legislate' a different result." 961 F.3d at 903.

In fact, the legislative history is even more persuasive here than in *Chicago v. Barr*. The One Big Beautiful Bill Act appropriated funds for COPS and Byrne JAG grants, conditioned on "compliance, as determined by the Attorney General, with … 8 U.S.C. 1373." Pub. L. No. 119-21 § 100054(5)(C), 139 Stat. 72, 390. Plaintiffs' COPS grants are funded under a prior appropriations law, but the One Big Beautiful Bill Act confirms that Congress knows how to condition COPS funding on compliance with section 1373. Yet Congress did not do so in appropriating funds for 2025 COPS grants. *See* Pub. L. No. 119-4, Div. A Tit. III § 1301(5), 139 Stat. 9 (2025).

In addition, as the Seventh Circuit observed, no federal law "shall be construed to authorize [the federal government] to exercise any direction, supervision, or control over any police force or … political subdivision." *Chi. v. Barr*, 961 F.3d 908 (quoting 34 U.S.C. § 10228(a)). As in *Chicago v. Barr*, "incorporation of § 1373" in the Immigration Condition "directly conflicts" with section 10228 because DOJ "seeks to prohibit" Plaintiffs "from providing certain instructions and limitations on the actions of its own police force, thus exercising 'direction, supervision, or control' over that police force." *Id.* DOJ told this Court that the Seventh Circuit was "wrong" to rely on section 10228. R. 49 at 22. But as this Court noted, *Chicago v. Barr* is "binding." R. 28 at 11.

17

Regardless, the Seventh Circuit's conclusion that a section 1373 certification condition impinges on local control is important for another reason: if "Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Even if Congress could constitutionally do so, the COPS Act does not unambiguously condition funding on grantees' assistance with federal civil immigration enforcement.

***Remaining Conditions***. DOJ argues that regulations authorize the Executive Order Condition and Federal Funding Restrictions. Mem. at 16. But "an agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 357 (1986). As this Court observed, the COPS Act "'does not allow Executive Orders to control the distribution of funds," and no regulation can "'create statutory authority.'" R. 28 at 12; *accord Fresno v. Mullin*, 2026 WL 1998576, at *22–23; *S.F. v. DOJ*, 822 F. Supp. 3d at 1067; *Freedom Network*, 2026 WL 1899186, at *18; *Chi. v. Noem*, 2025 WL 3251222, at *7. Far from having statutory authority, some Conditions contradict federal statutes. For example, the gender ideology executive order and Restriction "contraven[e] federal antidiscrimination law." *Hous. Auth. of City & Cnty. of S.F. v. Turner*, 2025 WL 3187761, at *11 (N.D. Cal. Nov. 14, 2025), *appeal filed*, No. 26-233 (9th Cir.); *see A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 771 (7th Cir. 2023) (excluding transgender student from bathroom likely violated Title IX).

### 2. *Dalton* does not preclude Plaintiffs' claim.

Citing *Dalton v. Specter*, 511 U.S. 462 (1994), DOJ argues that Count 1 asserts only statutory violations. Mem. at 12–13, 17. *Dalton* involved allegations that the President "acted in excess" of his discretionary statutory authority to close naval bases. 511 U.S. at 472–74. By contrast, Congress gave DOJ no authority to impose the Challenged Conditions. *Dalton* permits

constitutional challenges to executive actions taken "in the absence of any authority." *CWIT*, 2025 WL 1331743, at *5.

Moreover, *Dalton* held that "claims **simply** alleging that the President has exceeded his statutory authority are not 'constitutional' claims." 511 U.S. at 473 (emphasis added); *see also id.* at 472 ("not … every" executive action "in excess of … statutory authority" is unconstitutional). *Dalton* thus "does not preclude fundamentally constitutional claims in situations where the facts could also be characterized as statutory violations." *Chi. v. DHS*, 815 F. Supp. 3d at 750–51; *see Chi. v. Barr*, 961 F.3d at 931 (holding that the Attorney General "exceeded the authority delegated by Congress" and "violated the … separation of powers" based on the same conduct); *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023). As this Court held, *Dalton* "does not foreclose" Count 1 because it is "fundamentally tied to the constitutional allocation of the power of the purse." R. 28 at 10; *see also Freedom Network*, 2026 WL 1899186, at *17.

### B.     DOJ Acted Ultra Vires (Count 2).

Count 2 alleges that DOJ acted ultra vires in imposing the Challenged Conditions. R. 39 ¶¶ 168–74. Because (as we explain above) DOJ had no authority to impose the Conditions, DOJ acted ultra vires. *See Chi. v. Barr*, 961 F.3d at 891 (affirming judgment that DOJ acted ultra vires by imposing section 1373 certification condition); *see also New Mexico v. Musk*, 824 F. Supp. 3d 80, 105 (D.D.C. 2026); *California v. Mullin*, 2026 WL 1649160, at *7 n.4 (D. Mass. June 8, 2026).

### C.     DOJ Violated the Spending Clause (Count 3).

Count 3 alleges that the Challenged Conditions violate the Spending Clause because they are unrelated to the COPS Act's purpose and are impermissibly ambiguous. R. 39 ¶¶ 175–82; *see South Dakota v. Dole*, 483 U.S. 203, 207–08, 211 (1987). This Court found Count 3 likely to succeed, R. 28 at 12–16, and DOJ offers no new reason to justify a different result.

19

### 1.   The Challenged Conditions are unrelated to the grants' purposes.

Grant conditions must be "reasonably related" to the grant's purpose; otherwise "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York v. United States*, 505 U.S. 144, 167, 172 (1992). This Court found Plaintiffs "likely to show that the Immigration Condition, the Anti-DEI Condition, and the Federal Funding Restrictions are not reasonably related to the purpose of the COPS Act." R. 28 at 13.

As for the Immigration Condition, the COPS Act seeks to improve cooperation between local police and "*members of the community* to address *crime*." Pub. Law No. 103-322, 108 Stat. at 1807–08 (emphases added). By contrast, the Immigration Condition promotes local police assistance with *federal authorities* enforcing federal *civil* immigration law. DOJ is thus using the Immigration Condition "as a hammer to further a completely different policy" than the one enacted by Congress. *Chi. v. Barr*, 961 F.3d at 887. In doing so, this Court explained, "the Immigration Condition would likely undermine the relationship between local police and the community," contradicting Congress's objectives. R. 28 at 13 (citing *Chi. v. Sessions*, 888 F.3d at 291); *see also Ill. v. FEMA*, 801 F. Supp. 3d at 96 (immigration conditions were "not reasonably related to the purposes of the grants"); *California v. U.S. Dep't of Transp.*, 808 F. Supp. 3d 291, 308 (D.R.I. 2025) (same); *Colorado v. DOJ*, 455 F. Supp. 3d 1034, 1055–56 (D. Colo. 2020) (Byrne JAG grant "condition requiring certification of compliance with [section 1373] exceeds the relatedness requirement"); *City & County of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 961 (N.D. Cal. 2018), *aff'd in part, vacated in part sub nom. City & County of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (same).

As for the Anti-DEI Condition, the COPS Act requires grantees to "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks."

20

34 U.S.C. § 10382(c)(11). This Court correctly concluded that the Anti-DEI Condition appears unrelated to this "specific mandate" as well as "the general purpose of the COPS Act to enhance cooperation between law enforcement agencies and local communities." R. 28 at 14.

The Immigration and Anti-DEI Conditions are also unrelated to the COPS Act's purpose because they are not limited to activities funded by COPS grants. The Immigration Condition prohibits Plaintiffs from restricting "any … official"—not just police officers, much less officers funded by COPS grants—from spending their time on federal civil immigration enforcement. AR at 245. The Anti-DEI Condition similarly prohibits Plaintiffs from operating "any" DEI programs that DOJ deems unlawful, regardless of whether those programs are funded by COPS grants or are even federally funded at all. *Id.* For this reason too, the Court concluded, the Immigration and Anti-DEI Conditions "extend … well beyond any reasonable relationship with the purpose of the COPS Act." R. 28 at 14.

As for the Federal Funding Restrictions, the Court could "discern no apparent connection" between the Restrictions and the COPS Act's purpose. R. 28 at 15. For good reason: there is no conceivable relationship between (a) the COPS Act's goal of improving cooperation between local law enforcement and local communities and (b) COVID-19 vaccinations, gender ideology, anti-DEI policy, environmental justice, and the protection of public monuments.

The Executive Order Condition similarly requires compliance with documents that address, among many other topics, COVID-19 vaccinations, gender ideology, anti-DEI policy, environmental justice, and public monuments. The Executive Order Condition is thus not germane to the COPS's Act goals for the same reasons as the Federal Funding Restrictions. And like the Immigration and Anti-DEI Conditions, the Executive Order Condition applies to all grantee activities—regardless of whether they are funded by COPS grants.

21

DOJ offers little basis to find a reasonable relationship beyond calling the requirement a "'low threshold.'" Mem. at 16. But as Judge Kennelly observed, "funding conditions must still 'bear some relationship to the purpose of the federal spending'"—a requirement that courts have repeatedly invoked in enjoining similar grant conditions. *Freedom Network*, 2026 WL 1899186, at *16; *e.g.*, *Fresno v. Mullin*, 2026 WL 1998576, at *26 (citing cases).

### 2. The Challenged Conditions are impermissibly ambiguous.

In granting a preliminary injunction, the Court correctly held that the Executive Order Condition "is impermissibly ambiguous because it is open-ended and retroactive." R. 28 at 15; *accord Fresno v. Mullin*, 2026 WL 1998576, at *25–26. First, the Condition "does not limit its applicability to existing Presidential Memoranda and Executive Orders," so "Plaintiffs cannot know and understand their obligations." R. 28 at 15; *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 25 (1981) (Spending Clause does not permit "post acceptance or 'retroactive' conditions"). Second, the Condition "does not [define] 'Presidential Memoranda,' thus leaving Plaintiffs to guess as to what is included." R. 28 at 15. Third, the Condition neither "'specifi[es] *which*" of the hundreds of executive orders "are applicable'" nor "'explain[s] *how* the [Executive Orders] are applicable.'" *Id.* Fourth, the Condition "'incorporate[s] the equally vague language of the [Executive Orders].'" *Id.* For example, the executive orders upon which DOJ based the Federal Funding Restrictions are ambiguous for the same reasons as the Restrictions. *See infra* at 23–24; *see also Hous. Auth.*, 2025 WL 3187761, at *13–14 (explaining that the gender ideology executive order is "incoherent").

The other Challenged Conditions are impermissibly ambiguous too. The Immigration Condition requires compliance with section 1373. DOJ's lawsuits against Chicago, Saint Paul, and others allege that section 1373 requires local governments to share information about a person's

custody status, release date, and contact information. Judge Jenkins correctly rejected that theory, *U.S. v. Ill.*, 796 F. Supp. 3d at 516–19, but DOJ continues to press it on appeal. Plaintiffs thus face uncertainty about what DOJ asks them to certify. *See Ill. v. FEMA*, 801 F. Supp. 3d at 82, 96 (section 1373 certification condition violated Spending Clause because agency did not "defin[e] what compliance entails"); *S.F. v. Sessions*, 349 F. Supp. 3d at 934, 958 (citing "DOJ's evolving interpretations" of section 1373 in holding that certification condition violated Spending Clause).

The Anti-DEI Condition's meaning is also uncertain. DOJ argues that the Condition requires only compliance with existing law. Mem. at 11. This Court rejected that argument. R. 28 at 11. But even if DOJ were right, what "'might make any given 'DEI' program violate Federal anti-discrimination laws'" "'is left entirely to the grantee's imagination.'" *Id.* at 16. In fact, when pressed at oral arguments about anti-DEI certifications, even DOJ has been unable to explain "what 'illegal DEI' means." *Freedom Network*, 2026 WL 1899186, at *7. This Court thus correctly concluded that the Anti-DEI Condition is "'rife with … ambiguity.'" R. 28 at 16.

Finally, the Federal Funding Restrictions are ambiguous:

- Grantees cannot use COPS funds to "directly or indirectly support" schools that require Covid vaccinations, AR at 15, raising questions that the Restriction does not answer. For example, would a COPS-funded officer "support" a school by investigating a crime on school grounds?

- The Restrictions do not define "gender ideology," which "is likely undefinable" because it "lacks scientific or any other discernable basis" and is thus "too vague to give Plaintiff[s] notice of what [DOJ] expects from them." *Washington v. HHS*, 2025 WL 3002366, at *23 (D. Or. Oct. 27, 2025), *appeal filed*, No. 25-8077 (9th Cir.). Nor does DOJ explain what it means to "promote" gender ideology. For example, would

Plaintiffs promote gender ideology by using COPS funds to hire a transgender officer or by allowing COPS-funded officers to use the bathroom or pronouns of their choice? *See Massachusetts v. U.S. Dep't of Agric.*, 2026 WL 1815807, *21 (D. Mass. June 24, 2026) (enjoining gender-ideology condition).

- Grantees cannot use COPS funds for "projects that provide or advance [DEI] and accessibility, or environmental justice programs, services, or activities." AR at 15. The Restriction neither define DEI or "environmental justice" nor inform grantees what it means to "advance" those goals. *See Fresno v. Mullin*, 2026 WL 1998576, at *24 (enjoining similar condition).

- Grantees are ineligible for COPS funds if they "failed to protect public monuments, memorials, and statues." AR at 15. The Restriction leaves open basic questions such as whether grantees may relocate statues or will lose funding if their best efforts do not prevent vandalism.

DOJ does not dispute that the Federal Funding Restrictions are ambiguous, and its defense of the other Conditions is incorrect for the reasons cited above. Nor is DOJ correct in asserting that Congress need only "make clear that acceptance of federal funds obligates States to comply with a condition." Mem. at 14 (citing *Pennhurst*, 451 U.S. at 18). That would make the unambiguity requirement meaningless; any enumerated condition, no matter how ambiguously worded, would suffice. As courts have repeatedly held, however, DOJ misreads *Pennhurst*. *See Fresno v. Mullin*, 2026 WL 1998576, at *24 (citing cases); *Mass. v. Dep't of Agric.*, 2026 WL 1815807, at *15; *California v. HHS*, 811 F. Supp. 3d 183, 201–02 (D. Mass. 2025). *Pennhurst* itself makes clear: "The crucial inquiry ... is whether Congress spoke so clearly that we can fairly say that the State could make an informed choice." 451 U.S. at 25.

24

## D.    DOJ Violated the APA (Counts 4-6).

The APA authorizes review of "final agency action." 5 U.S.C. § 704. This Court correctly concluded that "the Challenged Conditions are a final agency action subject to review under the APA." R. 28 at 17–18 (citing cases). DOJ does not contest the Court's conclusion.

DOJ instead repeats its argument that COPS grant conditions are "committed to agency discretion by law," 5 U.S.C. § 701(2), because COPS grants are awarded on a competitive basis. Mem. at 21–23. There is "'no merit'" in DOJ's suggestion that competitive grants "'are somehow categorically unreviewable'" under the APA. *Mass. v. Dep't of Agric.*, 2026 WL 1815807, at *19; *see, e.g.*, *New York v. Trump*, 171 F.4th 1, 19–20 (1st Cir. 2026) (reviewing APA challenge to "competitive" grants); *Chi. v. Noem*, 2025 WL 3251222, at *5 (same). Rather, courts interpret section 701(a)(2) "'narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019). This Court correctly held that there is "a meaningful standard against which to judge the Challenged Conditions—the twenty-four enumerated purposes set forth in 34 U.S.C. § 10381(b)." R. 28 at 17. Indeed, as the *San Francisco v. DOJ* court stated in rejecting DOJ's position, the standard governing challenges to COPS grant conditions is "crystal clear." 822 F. Supp. 3d at 1065; *see Fresno v. Mullin*, 2026 WL 1998576, at *28.

Citing *Lincoln v. Vigil*, 508 U.S. 182 (1993), DOJ asserts that "grant-award decisions are presumptively unreviewable." Mem. at 22. That "is entirely beside the point" because "[t]he grants have already been allocated to plaintiffs." *S.F. v. DOJ*, 822 F. Supp. 3d at 1065. As this Court noted, Plaintiffs do not challenge "the *allocation* of funds" but rather DOJ's "decision to impose the Challenged Conditions in the first place." R. 28 at 17. As for *Lincoln*, it involved an agency-created

program that "no statute … even mention[ed]," and Congress's lump-sum appropriation did not "circumscribe agency discretion." 508 U.S. at 193. By contrast, Congress created COPS and circumscribed DOJ's discretion by authorizing grants for restricted purposes. *See* 34 U.S.C. § 10381. *Lincoln* is thus inapposite. *See Chi. v. DHS*, 815 F. Supp. 3d at 754; *see also N.Y. v. Trump*, 171 F.4th at 20 n.5 (distinguishing *Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002)).

### 1. The Challenged Conditions are arbitrary and capricious (Count 4).

Count 4 alleges that DOJ's imposition of the Challenged Conditions was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). R. 39 ¶¶ 183–91. Agency action is arbitrary and capricious if it is not "reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024). An agency can neither "rel[y] on factors which Congress has not intended it to consider" nor ignore "an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And when agencies change policies, they must provide "good reasons for the new policy" and demonstrate that they considered "reliance interests" engendered by the prior policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

The Challenged Conditions themselves show that DOJ relied on factors that Congress did not intend DOJ to consider. As this Court observed, Congress identified the purposes of COPS grants but did not mention "any … issues related to the Challenged Condition[s]." R. 28 at 9.

DOJ ignored important aspects of the problem too. For example, the Immigration Condition promotes local police assistance with federal civil immigration enforcement, but such assistance could "undermin[e]" local police "effectiveness" by "damaging" their "cooperative relationship with … residents." *Chi. v. Barr*, 961 F.3d at 887. And by requiring grantees to certify that the Anti-DEI Condition is material under the False Claims Act while threatening treble damages suits for certifications that DOJ deems false under its reinterpretation of anti-

discrimination laws, DOJ incentivized grantees to abandon lawful and valuable diversity programs. The administrative record reflects no consideration of these "reasons to not impose the contested conditions," "highlight[ing] the arbitrariness of the process." *Ill. v. FEMA*, 801 F. Supp. 3d at 94.

DOJ also offered no good reason for changing its policy. DOJ did not insert the Challenged Conditions in 2024 COPS grants, AR at 396–432, yet the administrative record does not explain why DOJ added the Conditions to 2025 grants. Nor does the record reflect any consideration of grantees' reliance on COPS funds to enhance public safety, free from unlawful conditions. "Budget planning relies on these grants, and inserting an obligation to certify as to all independently funded programs within a municipality unsettles expectations." *Chi. v. Noem*, 2025 WL 3251222, at *7.

The administrative record includes executive orders directing agencies to impose some of the Challenged Conditions, AR at 762–80, suggesting that DOJ changed its policy to satisfy the President. But DOJ "cannot avoid the arbitrary and capricious analysis simply by claiming [they were] acting at the instruction of the President." *Ill. v. FEMA*, 801 F. Supp. 3d at 93. Otherwise, the government could "evade APA-mandated accountability by simply issuing an executive order first." *Nebraska v. Su*, 121 F.4th 1, 15 (9th Cir. 2024); *accord Agatha v. Trump*, 151 F.4th 9, 11 (1st Cir. 2025), *stay granted sub nom. Trump v. Orr*, 146 S. Ct. 44 (2025); *Chamber of Com. v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996); *see New York v. Trump*, 811 F. Supp. 3d 215, 235-39 (D. Mass. 2025) (distinguishing *Orr*), *appeal filed*, No. 26-1174 (1st Cir.).

In any case, the executive orders do nothing to cure the flaws discussed above. Moreover, "the President is without authority to set aside congressional legislation by executive order." *In re United Mine Workers*, 190 F.3d 545, 551 (D.C. Cir. 1999); *see Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to

27

enact, to amend, or to repeal statutes."). The executive orders themselves direct that they "shall be implemented consistent with applicable law," AR at 763, 768, 773, 776, 779, yet the record does not explain how the Conditions are consistent with the COPS Act. In all events, the executive orders in the record do not even purport to direct agencies to condition funding on compliance with section 1373 or agreements to end environmental justice programs.

DOJ suggests that it need not explain itself because "the Challenged Conditions are not new." Mem. at 23. In fact, the 2024 conditions do not mention section 1373, anti-DEI, or any other Challenged Condition. AR at 396–432. As Judge Kennelly observed in addressing another grant program, there was no "previous requirement to certify compliance with all federal anti-discrimination law"; the current Administration seeks "to drastically modify the meaning of 'discrimination'"; and "no certification regarding False Claims Act liability relating to DEI or any condition related to immigration enforcement was previously required." *Freedom Network*, 2026 WL 1899186, at *17, *20. Moreover, the executive orders upon which DOJ based the Challenged Conditions "repeatedly cast themselves as departing drastically from the practices of prior administrations." *Hous. Auth.*, 2025 WL 3187761, at *12. For example, President Trump declared on his first day in office that the federal government's support for DEI "ends today." *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Executive Order No. 14,151, 90 Fed. Reg. 8339, 8339 (Jan. 20, 2025). But even if there were nothing new about the 2025 conditions, DOJ's "failure to provide any explanation" for the 2025 conditions "is arbitrary and capricious under even the most lenient standard." *Chi. v. Noem*, 2025 WL 3251222, at *7.

Finally, DOJ disputes Plaintiffs' reliance interests, observing that Plaintiffs could continue using COPS funds to protect public safety simply by accepting the Challenged Conditions. Mem.

at 24. By that logic, no grantee would ever have reliance interests in a grant free from unlawful conditions. That is not the law.

### 2. DOJ exceeded its authority and acted contrary to law (Counts 5-6).

Count 5 alleges that the Challenged Conditions are "contrary to constitutional right" in violation of 5 U.S.C. § 706(2)(B), R. 39 ¶¶ 192–96, while Count 6 alleges that DOJ acted "not in accordance with law" and "in excess of [its] authority" in violation of 5 U.S.C. § 706(2)(A), (C), R. 39 ¶¶ 197–202. This Court found that DOJ likely "violated the APA" by acting "contrary to the Constitution and in excess of statutory authority." R. 28 at 16. Because the Court was correct for the reasons discussed above, DOJ violated section 706(2) of the APA. *See also S.F. v. DOJ*, 822 F. Supp. 3d at 1066–67 (finding that DOJ likely violated the APA in imposing COPS grant conditions).

### E. The Immigration Condition Violates the Tenth Amendment (Count 7).

Count 7 alleges that the Immigration Condition is unlawful because it demands compliance with an unconstitutional statute—8 U.S.C. § 1373. R. 39 ¶¶ 203–07. As Judge Leineweber and many other courts have held, section 1373 violates the Tenth Amendment. *See Chi. v. Sessions*, 321 F. Supp. 3d at 869–73;[1] *see also U.S. v. Ill.*, 796 F. Supp. 3d at 523 (section 1373 is "in tension with the Tenth Amendment"). These decisions are correct.

In *Murphy v. NCAA*, 584 U.S. 453 (2018), the Supreme Court applied the Tenth Amendment's anticommandeering doctrine to invalidate a federal statute prohibiting states from enacting laws authorizing sports gambling. Section 1373 is structured the same way, prohibiting

---

[1]     *See Oregon v. Trump*, 406 F. Supp. 3d 940, 971 (D. Or. 2019), *aff'd in part, vacated in part sub nom. City & County of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *City of Los Angeles v. Sessions*, 2019 WL 1957966, at *4 (C.D. Cal. Feb. 15, 2019); *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 331 (E.D. Pa. 2018), *aff'd in part, vacated in part on other grounds sub nom. City of Philadelphia v. Att'y Gen.*, 916 F.3d 276 (3d Cir. 2019); *S.F. v. Sessions*, 349 F. Supp. 3d at 953; *see also United States v. Colorado*, 2026 WL 878882, at *3–6 (D. Colo. Mar. 31, 2026), *appeal pending*, No. 26-1214 (10th Cir.).

state and local governments from enacting laws restricting the sharing of citizenship or immigration status information. As in *Murphy*, there is "no way to understand" these provisions prohibiting state and local laws "as anything other than a direct command to the States. And that is exactly what the anticommandeering rule does not allow." *Id.* at 480.

Personnel decisions, moreover, are "of the most fundamental sort" to state sovereignty. *Gregory*, 501 U.S. at 460. But by preventing Plaintiffs from restricting certain employee conduct, section 1373 "eliminates [Plaintiffs'] ability to control [their] employees' communications" and thereby "effects a federally-imposed restructuring of power within state government." *Chi. v. Sessions*, 321 F. Supp. 3d at 870. That is untenable because "[a] state's ability to control its officers and employees lies at the heart of state sovereignty." *Id.* at 869.

To be sure, Judge Leinenweber withdrew his declaratory judgment that section 1373 is unconstitutional as unnecessary to provide the City with complete relief. *See City of Chicago v. Barr*, 513 F. Supp. 3d 828, 832–33 (N.D. Ill. 2021). But the Seventh Circuit called Judge Leinenweber's analysis "compelling," and the Seventh Circuit's own analysis supports Judge Leinenweber's declaratory judgment. *Chi. v. Barr*, 961 F.3d at 898. The Seventh Circuit explained that "[t]he burden of [a section 1373 certification] requirement is not insignificant" because a "local government could not instruct its own employees that they must devote their time to law enforcement tasks that it deems a higher priority rather than respond to those information requests from ICE." *Id.* at 896. "That restriction of the state or local government would constitute direction or control over the communications by the state or local police force." *Id.* at 909.

DOJ responds that even if it cannot directly enforce section 1373, it may do so indirectly though grant conditions. Mem. at 21. Unlike the cases cited by DOJ, however, the Immigration Condition expressly demands compliance with an unconstitutional statute. That is unlawful: an

30

unconstitutional statute "cannot be applied *to anyone*," *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011), because the statute is "a legal nullity," *Branch v. Smith*, 538 U.S. 254, 281 (2003).

### F. Section 1373 Imposes No Obligations (Count 8).

Count 8 seeks a declaration that section 1373 imposes no obligations on Plaintiffs. R. 39 ¶¶ 208–12. That is true for two reasons. First, as discussed above, section 1373 is unconstitutional.

Second, section 1373 lacks preemptive effect. Judge Jenkins dismissed DOJ's lawsuit against Chicago because section 1373 does not preempt the Welcoming City Ordinance. *See U.S. v. Ill.*, 796 F. Supp. 3d at 519–25. Collateral estoppel precludes DOJ from relitigating that determination. *See Prymer v. Ogden*, 29 F.3d 1208, 1212–13 & 1213 n.2 (7th Cir. 1994) (reciting collateral-estoppel elements and citing precedent holding that "an appeal does not suspend the operation of a final judgment for collateral estoppel purposes").

Beyond collateral estoppel, this Court correctly "agree[d] with the reasoning in *United States v. Illinois*." R. 28 at 6 n.2. In *Murphy v. NCAA*, the Supreme Court held that for a federal statute to preempt state law, the statute must "be best read as one that regulates private actors" rather than government entities. 584 U.S. at 477; *accord McHenry County v. Raoul*, 44 F.4th 581, 588 (7th Cir. 2022). This rule "derives from the Constitution, which 'confers upon Congress the power to regulate individuals, not States.'" *U.S. v. Ill.*, 796 F. Supp. 3d at 520 (quoting *N.Y. v. U.S.*, 505 U.S. at 166). "It also reinforces the anticommandeering doctrine, which preserves dual sovereignty by prohibiting federal command of States as sovereigns (rather than market participants)." *Id.*

Applying this law, courts "have uniformly found that § 1373 is not a preemptive provision." *Id.* (citing cases). "The plain text of § 1373 only operates on State and local government entities and officials, prohibiting restrictions on their ability to share certain

31

immigration-related information with DHS." *Id.* at 521. "By contrast, § 1373 doesn't alter what private individuals can or cannot do …." *Id.* There is thus "no way to read § 1373 as regulating anyone other than States and their political subdivisions," which "nullifies § 1373 as a preemption provision." *Id.* at 522.

DOJ reiterates that it may enforce section 1373 through grant conditions. Mem. at 21. That is incorrect, as we explain above. Regardless, DOJ has nothing to enforce because section 1373 lacks preemptive effect. The Immigration Condition thus imposes no obligations on Plaintiffs.

### III.     The Court Should Award Plaintiffs' Requested Remedies.

Plaintiffs seek three remedies. First, the Court should declare that the Challenged Conditions are unlawful for the reasons described above. *See* 28 U.S.C. § 2201(a).

Second, the Court should vacate the Challenged Conditions under the APA. Vacatur is the "logical consequence" of a declaration that the Challenged Conditions are unlawful, *Ill. v. FEMA*, 801 F. Supp. 3d at 96–97, because the APA directs that a "reviewing court shall … set aside [unlawful] agency action," 5 U.S.C. § 706(2). Courts "have long understood § 706(2) to authorize vacatur" of agency actions "rather than merely providing injunctive relief that enjoin[s] enforcement of the [agency action] against the specific plaintiffs." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826, 830–31 (2024) (Kavanaugh, J., concurring). Indeed, "vacatur is the presumptive remedy." *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015); *see City of Chicago v. DHS*, 2025 WL 3171302, at *2 (N.D. Ill. Nov. 13, 2025); *Cook County v. Wolf*, 498 F. Supp. 3d 999, 1005–07 (N.D. Ill. 2020).

Third, the Court should permanently enjoin DOJ from imposing the Challenged Conditions on Plaintiffs. A permanent injunction requires that (1) plaintiff "suffered an irreparable injury"; (2) "remedies available at law … are inadequate to compensate for that injury"; (3) "the balance of hardships between the plaintiff and defendant" warrants "a remedy in equity"; and (4) "the public

interest would not be disserved." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In the APA context, however, "there [is] no separate need to show irreparable injury" if the agency action was illegal because irreparable injury "is merely one possible 'basis for showing the inadequacy of the legal remedy.'" *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *accord Michigan v. Noem*, 819 F. Supp. 3d 1163, 1183 (D. Or. 2025); 5 U.S.C. § 703. Regardless of which standard applies, a permanent injunction should issue for many of the same reasons that the Court identified in granting a preliminary injunction.

As the Court stated, "[i]rreparable harm 'is presumed' when a defendant violates constitutional provisions that protect 'intangible and unquantifiable interests.'" R. 28 at 19 (quoting *Ezell*, 651 F.3d at 699). "'The separation of powers is one such interest.'" *Id.*; *see Chi. v. Barr*, 961 F.3d at 892. Because DOJ violated the separation of powers and the Spending Clause, "no further showing of irreparable injury … is required." *CWIT*, 778 F. Supp. 3d at 993.

Irreparable harm exists "even absent" the constitutional violations. R. 28 at 19. Plaintiffs must accept the Challenged Conditions or lose critical public-safety funding. This "Hobson's choice" is irreparable injury. *City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 950 (N.D. Ill. 2017).

If Plaintiffs accepted the Challenged Conditions, the "uncertainty as to whether [DOJ] will consider [the] conditions satisfied" under DOJ's evolving interpretation of the law "creates irreparable injury" by "interfer[ing] with Plaintiffs' ability to budget, plan for the future, and properly serve their residents." *City of Fresno v. Turner*, 2025 WL 2721390, at *19 (N.D. Cal. Sept. 23, 2025); *see also City of Evanston v. Barr*, 412 F. Supp. 3d 873, 886–87 (N.D. Ill. 2019). Plaintiffs would also put themselves at risk of treble damages litigation for conduct that the COPS Act requires. Again, the COPS Act directs grantees to "seek, recruit, and hire members of racial and ethnic minority groups and women in order to increase their ranks" in police departments.

33

34 U.S.C. § 10382(c)(11). The then-Attorney General asserted, however, that it is illegal DEI to "prioritize[] candidates from 'underrepresented groups' for … hiring." Kane Dec., Ex. O at 4.

Moreover, the Immigration Condition "would damage local law enforcement's relationship with immigrant communities and decrease the cooperation essential to prevent and solve crimes both within those communities and [Plaintiffs' cities] at large." *Chi. v. Sessions*, 321 F. Supp. 3d at 877. As Plaintiffs' declarations explain, *see* Milstein Dec. ¶¶ 4–6; Jacob Dec. ¶¶ 5–8, Plaintiffs "have concluded that the safety of their communities is furthered by a relationship of trust with the undocumented persons and lawful immigrants residing therein—and those localities are clearly in the best position to determine the security needs of their own communities." *Chi. v. Sessions*, 888 F.3d at 291. "Such trust, once destroyed by the mandated cooperation and communication with the federal immigration authorities, would not easily be restored." *Id.*

If Plaintiffs declined the grants, by contrast, public safety would suffer. Absent COPS funding, Saint Paul could not implement its plan to address chronic homelessness, harming unhoused people and undermining officers' ability to police quality-of-life offenses. R. 12-3 ¶¶ 20, 24; *see* Bacher Dec. ¶ 2. Santa Monica could not train its officers in de-escalation tactics, alternatives to the use of force, and responding to people experiencing mental illness—training that is increasingly critical as police have more contact with unhoused residents. R. 40-1 ¶¶ 12, 16–20; *see* Charles Dec. ¶ 2. Chicago could lose 50 police officers, risking public safety while further burdening existing officers. *See* R. 12-2 ¶¶ 19–21. Plaintiffs face strained budgets already, so using other funds to replace these grants may not be feasible. *Id.* ¶ 20; *see* Maulawin Dec. ¶ 2. As this Court held, these "ripple effects of the Challenged Conditions on Plaintiffs' budget plans and on the ability of [Plaintiffs] to hire and train police to serve their communities are not quantifiable." R. 28 at 19. "While losing grant funding is not irreparable harm, the consequence of

34

relying on a diminished police force to serve the community is." *Id.*; *see S.F. v. DOJ*, 822 F. Supp. 3d at 1067–68.

The remaining factors—the balance of the equities and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest is "served by an injunction in that it acts as a check on the executive's encroachment of congressional power that violates the separation of powers." *Chi. v. Barr*, 961 F.3d at 918. The public interest is also "'served by compliance with the APA.'" *Pacito v. Trump*, 169 F.4th 895, 939 (9th Cir. 2026). That public interest is particularly strong here because DOJ's actions force Plaintiffs to either (a) accept conditions that Plaintiffs believe to be unlawful, risking treble-damages suits and even criminal penalties if DOJ disagrees with Plaintiffs' certifications, or (b) forego critical funding, impairing Plaintiffs' budgets and undermining public safety.

By contrast, DOJ will suffer no cognizable harm. DOJ already decided that Plaintiffs should receive COPS grants. Enjoining the Challenged Conditions could not impact DOJ "in light of [DOJ's] frequent assertion that the Challenged Conditions seek only the enforcement of federal law as it currently stands." *S.F. v. DOJ*, 822 F. Supp. 3d at 1068. DOJ can simply "distribute the funds without mandating the conditions—as has been done for over a decade." *Chi. v. Sessions*, 888 F.3d at 291.

## CONCLUSION

Plaintiffs respectfully request that the Court deny DOJ's motion for summary judgment and enter judgment in Plaintiffs' favor.

35

Dated: July 20, 2026

Respectfully submitted,

**Mary B. Richardson-Lowry**
Corporation Counsel of the City of Chicago

By: /s/ *Stephen Kane*
Stephen Kane (IL Bar No. 6272490)
Rebecca Hirsch (IL Bar No. 6279592)
Chelsey Metcalf (IL Bar No. 6337233)
Laura Geary (IL Bar No. 6351762)
John Kauffman (IL Bar No. 6353229)
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-0458
stephen.kane@cityofchicago.org
rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org
laura.geary@cityofchicago.org
john.kauffman@cityofchicago.org

*Attorneys for Plaintiff City of Chicago*

**Irene Kao**
Saint Paul City Attorney

By: /s/ *Kelsey McElveen*
Kelsey McElveen**
Assistant City Attorney
Saint Paul City Attorney's Office
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Tel: (651) 266-8710
Fax: (651) 298-5619
Kelsey.McElveen@ci.stpaul.mn.us

*Attorneys for Plaintiff City of Saint Paul*

**Heidi von Tongeln**
City Attorney, City of Santa Monica

By: /s/ *Romy Ganschow*
Romy Ganschow**
Chief Deputy City Attorney
1685 Main Street, 3rd Floor
Santa Monica, California 90401
(310) 458-8336
romy.ganschow@santamonica.gov

*Attorneys for Plaintiff City of Santa Monica*

** Admitted pro hac vice

36