**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CITY OF CHICAGO, CITY OF SAINT PAUL, and CITY OF SANTA MONICA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE; TODD BLANCHE, in his official capacity; OFFICE OF COMMUNITY ORIENTED POLICING SERVICES; and CORY D. RANDOLPH, in his official capacity,<br><br>Defendants. | Case No. 25-cv-13863<br><br>Hon. Jorge L. Alonso |

**REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs' opening brief showed that the Court was correct to preliminarily enjoin DOJ from imposing the Challenged Conditions, consistent with "numerous" courts in "similar cases," R. 28 at 3, and for the same reasons should now order permanent relief. DOJ's response largely ignores Plaintiffs' brief while "acknowledg[ing] that the court ruled against many of [DOJ's] arguments at the preliminary injunction stage and that the same result will likely follow here if the court adheres to its prior reasoning." R. 68 ("Opp.") at 1. Plaintiffs agree and therefore request that the Court declare the Challenged Conditions to be unlawful, vacate DOJ's actions, and permanently enjoin DOJ from imposing the Challenged Conditions on Plaintiffs' COPS grants.

## ARGUMENT

### I. The Court Has Jurisdiction.

Plaintiffs' opening brief cited multiple independent reasons why Plaintiffs have standing to sue, introducing evidence in support. R. 58-1 ("Mem.") at 9–11. DOJ largely ignores Plaintiffs' reasoning and ignores Plaintiffs' evidence entirely. DOJ instead reiterates its position while "acknowledg[ing] that the court is likely to reach the same result that it did at the preliminary injunction stage if it adheres to the reasoning it applied when considering preliminary relief." Opp. at 2. For the reasons identified in Plaintiffs' opening brief and in intervening case law, the Court should adhere to its conclusion that Plaintiffs have standing. *See City of Salem v. Mullin*, 2026 WL 2445474, at *6 (D. Or. Aug. 20, 2026) (plaintiffs had standing to challenge anti-DEI, executive order, and other grant conditions).[1]

---

[1] DOJ asserts that "[a]ll three plaintiffs certified in their grant applications that they are in compliance with § 1373." Opp. at 2. DOJ dropped that point as to Saint Paul at the preliminary-injunction stage, acknowledging that it had "overlooked" an addendum to Saint Paul's application rejecting the section 1373 certification. R. 49 at 13–14. The Court thus observed that Saint Paul "expressly provided [DOJ] with notice that it 'cannot agree' to the certification." R. 28 at 4. DOJ has nevertheless repeated its mistake in both of its summary-judgment briefs, R. 54 at 7; Opp. at 2, despite Plaintiffs' reminder that Saint Paul's application

DOJ also repeats its argument that the Tucker Act displaces this Court's jurisdiction while again acknowledging that its argument fails "if the court follows the line of reasoning it followed at the preliminary injunction stage." Opp. at 3. DOJ does not meaningfully address the reasoning provided in the Court's preliminary-injunction ruling, R. 28 at 6–7, or in Plaintiffs' opening brief, Mem. at 11–12, and other courts have added to the authority rejecting DOJ's position in the meantime. *E.g.*, *Salem*, 2026 WL 2445474, at *7; *Illinois v. Vought*, 2026 WL 2099046, at *7 (N.D. Ill. July 21, 2026). DOJ thus offers no reason to disturb the "'near or total uniformity'" with which district courts have exercised jurisdiction over "'constitutional and APA claims seeking an injunction against the imposition of allegedly unlawful grant conditions.'" R. 28 at 7.

## II. Plaintiffs Are Entitled to Judgment as a Matter of Law.

### A. Plaintiffs Are Entitled to Judgment on Counts 1–6.

Plaintiffs' opening brief explained that Plaintiffs are entitled to judgment on Counts 1-6 because the Challenged Conditions violate the separation of powers, the Spending Clause, and the APA, and are ultra vires. Mem. at 13–29. DOJ responds by citing and summarizing arguments made in its summary-judgment motion, Opp. at 4–9, largely ignoring Plaintiffs' opposition. In the few instances where DOJ addresses Plaintiffs' points, DOJ's responses lack merit.

First, responding to Plaintiffs' point that the Anti-DEI Condition must require more than compliance with Title VI because Condition 9 separately requires compliance with that statute, DOJ asserts that the two conditions "tak[e] a belt-and-suspenders approach." Opp. at 5. But the "'canon against surplusage is strongest when,'" as here, "'an interpretation would render superfluous another part of the same'" document. *City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021) (statute); *see also Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1121 (7th Cir. 1990)

---

rejected the section 1373 certification. Mem. at 9 (citing AR at 287–88).

(contract). Moreover, the notion that the Anti-DEI Condition does not change the law is belied by the context. DOJ added the Anti-DEI Condition to comply with an executive order that singled out DEI for opprobrium, AR at 771, and that the Attorney General said "mak[es] clear" that DEI policies "'violate the text and spirit of our … Federal civil-rights laws.'" Kane Dec., Ex. G at 1. And unlike Condition 9, the Anti-DEI Condition requires compliance with "all" applicable anti-discrimination laws, applies to "any" program operated by grantees, and requires grantees to agree that their certification is material for purposes of the False Claims Act. AR at 376–77.

Second, DOJ argues that *Dalton v. Specter*, 511 U.S. 462 (1994), bars the separation-of-powers claim asserted in Count 1 because the complaint alleges that DOJ "exceeded" its authority. Opp. at 5–6. But the complaint also alleges that DOJ had no authority to impose the Challenged Conditions, R. 39 ¶¶ 96, 110, 120, 128, 138, and Plaintiffs base Count 1 on that allegation, *id.* ¶¶ 163–65. Even if Congress had given DOJ some authority, this Court correctly found Count 1 distinguishable from the claim at issue in *Dalton* because Count 1 is "fundamentally tied to the constitutional allocation of the power of the purse." R. 28 at 10; *see also New York v. Vought*, 2026 WL 2884108, at *16 (D. Or. Sept. 25, 2026) ("*Dalton* … did not hold that an act in excess of authority could not *also* be a constitutional violation."). DOJ ignores the point.

Beyond this, Paragraph 172—one of the two allegations cited by DOJ—falls under the ultra vires claim asserted in Count 2, which alleges that DOJ "lack[s] statutory authority" and "exceeded the statutory authority that Congress granted." R. 39 ¶¶ 171–72. In other words, Count 2 alleges that DOJ exceeded its non-existent authority, which is a proper basis for an ultra vires claim. *See City of Chicago v. Barr*, 961 F.3d 882, 919 (7th Cir. 2020) (*Dalton* "distinguish[ed] ultra vires claims, alleging an action that exceeded the authority, from constitutional claims, alleging an absence of *any* authority"). Paragraph 5—the second allegation cited by DOJ—alludes

in part to the Spending Clause claim asserted in Count 3. Plaintiffs base that claim on allegations that "even if Congress had authorized" the Challenged Conditions, they "would exceed Congress's authority under the Spending Clause." R. 39 ¶¶ 100, 111, 130, 139. That claim assumes Congress provided authority, making *Dalton* inapplicable. *See Chi. Women in Trades v. Trump*, 2025 WL 1331743, at *4 (N.D. Ill. May 7, 2025) ("*Dalton* did not involve the Spending Clause").

Third, DOJ contends that its imposition of the Immigration Condition was not arbitrary and capricious under the APA because DOJ could reasonably disagree with Plaintiffs' view that the Condition undermines public safety. Opp. at 9. That misses Plaintiffs' point. Plaintiffs maintain that DOJ ignored "an important aspect of the problem," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), by failing to even address substantial evidence indicating that the Immigration Condition would frustrate the COPS Act's goal of enhancing public safety. Mem. at 26–27; *see, e.g.*, Kane Dec., Exs. B–D. DOJ does not dispute that the administrative record lacks any suggestion that DOJ considered this central issue.

Fourth, DOJ finds it "obvious" that the department added the Challenged Conditions to advance the Trump Administration's priorities, obviating the need to explain the addition. Opp. at 9. To be sure, agencies may consider the President's priorities if consistent with the law. But doing so does not give agencies license to evade the APA. On the contrary, authority cited by DOJ explains that an agency must "provide reasoned explanation for its action." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Where, as here, the agency changes course, it must also "display awareness that it *is* changing position" and offer "good reasons for the new policy." *Id.* DOJ cites nothing in the administrative record that would satisfy these requirements, waiving the point, and the only "explanation" that Plaintiffs found does little more than restate some of the Challenged Conditions. *See* AR at 525–26.

Cases decided since Plaintiffs filed their opening brief support Plaintiffs' position. In *Salem*, the court preliminarily enjoined anti-DEI and executive order conditions—similar to the Anti-DEI and Executive Order Conditions at issue here—on grants that DHS awarded on a "competitive basis." 2026 WL 2445474, at *3. The court held that the conditions likely violated the separation of powers because DHS lacked authority to "'require recipients to accept the Administration's disputed framing of DEI.'" *Id.* at *8. In doing so, the court found DHS's argument that the conditions "simply require compliance with Title VI" to be "undermined" by a separate condition that—like Condition 9 here—required compliance with Title VI, explaining that DHS's interpretation would render the challenged conditions "superfluous." *Id.* The court next held that the conditions likely violated the Spending Clause because they were "ambiguous" and "unrelated" to Congress's goals in funding the grants. *Id.* at *9–12. Finally, the court held that DHS likely violated the APA because the conditions "represent an unexplained expansion of the conditions imposed on recipients beyond what was required in previous years," and DHS "did not consider or appreciate the interests of grant recipients who … rely on these funds." *Id.* at *12–13.

In *County of King v. Turner*, 2026 WL 2489361, at *3 (9th Cir. Aug. 25, 2026), Chicago, Santa Monica, and other local governments challenged anti-DEI and gender ideology conditions that HUD and the Department of Transportation imposed on grants awarded "on a competitive basis." The Ninth Circuit largely affirmed an order preliminarily enjoining the conditions, ruling that the agencies likely violated the APA. The court held that the anti-DEI conditions "exceed the limits imposed by Congress because"—like the Anti-DEI Condition—"they apply not just to the programs receiving grant funding from [the agencies], but to 'any programs' operated by the Local Governments." *Id.* at *6. The court likewise held that "neither Title VI nor the [False Claims Act] appears to authorize" the agencies' demand that—like DOJ's demand here—grantees agree that

the anti-DEI conditions are "material" for purposes of the False Claims Act, explaining that only Congress may "define what is 'material.'" *Id.* at *8. Finally, the court held that the agencies' attempt to restrict grantees from using funds to "promote 'gender ideology'"—like the Federal Funding Restrictions—"are contrary to the plain terms of the [underlying] statute." *Id.* at *8–9.

To be sure, the Ninth Circuit directed the district court to narrow the preliminary injunction to permit the agencies to "condition[] grant funds on an assurance that recipients, consistent with Title VI, will implement programs that *do* receive such assistance in a non-discriminatory manner." *Id.* at *7. Plaintiffs have long accepted conditions requiring Plaintiffs to use grant funds in compliance with Title VI. The problem here, this Court stated, is that "the Anti-DEI Condition advances the Administration's own interpretation of 'discrimination,'" which is "inconsistent with well-established legal precedent." R. 28 at 11 (quotations omitted). That problem became even clearer recently when DOJ, representing another agency, declared that "all DEI is inherently discriminatory." *California v. U.S. Dep't of Educ.*, 2026 WL 2754968, at *18 (D. Mass. Sept. 17, 2026); *see also* Kane Dec., Ex. G at 1. DOJ cannot demand that Plaintiffs agree to a condition that DOJ maintains prohibits all DEI—risking treble damages and criminal penalties—while the COPS Act requires Plaintiffs to engage in DEI. *See* 34 U.S.C. § 10382(c)(11).[2]

**B. Plaintiffs Are Entitled to Judgments on Counts 7–8.**

Plaintiffs' opening brief explained that the Immigration Condition violates the Tenth Amendment and lacks preemptive effect, entitling Plaintiffs to summary judgment on Counts 7 and 8. Beyond a citation to its summary-judgment motion, Opp. at 4, DOJ ignores the point.

---

[2] The Seventh Circuit is considering an appeal from Judge Kennelly's order preliminarily enjoining the Department of Labor from requiring grantees to provide the anti-DEI certification mandated by the President's Anti-DEI Order, AR at 771. *See Chi. Women in Trades v. Trump*, Case No. 25-2144 (7th Cir.). That appeal, which was argued in January, presents questions about the meaning of the Anti-DEI Order's certification requirement, so the court's ruling may be relevant in interpreting the Anti-DEI Condition.

On the same day that Plaintiffs filed their opening brief, a federal court dismissed DOJ's lawsuit alleging that Saint Paul's so-called "sanctuary" laws violate section 1373. *See United States v. Minnesota*, 2026 WL 2085701 (D. Minn. July 20, 2026). First, the court held that 8 U.S.C. § 1373 (as construed by DOJ) violates the Tenth Amendment by "commandeer[ing]" Saint Paul's "legislative and executive processes in significant ways." *Id.* at *15. Second, the court held that section 1373 lacks "preemptive force" because the statute does not "regulate[] private actors." *Id.* at *18–19. Since *Minnesota*, other courts have likewise held that section 1373 lacks preemptive effect. *See United States v. New Jersey*, 2026 WL 2621025, at *7 (D.N.J. Sept. 4, 2026); *United States v. City of Rochester*, 2026 WL 2581845, at *3–5 (W.D.N.Y. Sept. 1, 2026).

For the reasons described in Plaintiffs' opening brief, Mem. at 31, collateral estoppel precludes DOJ from relitigating the *Minnesota* court's determination that section 1373 does not preempt Saint Paul's "sanctuary" laws. Regardless of collateral estoppel, this intervening authority supports Plaintiffs' motion for summary judgment on Counts 7 and 8.

## III. The Court Should Award Plaintiffs' Requested Remedies.

Plaintiffs' opening brief showed that Plaintiffs are entitled to three remedies: (1) a declaratory judgment, (2) vacatur of the Challenged Conditions, and (3) a permanent injunction prohibiting DOJ from imposing the Challenged Conditions against Plaintiffs. Mem. at 32–35. DOJ responds that "any relief … should be limited to vacatur and should not include an injunction," ignoring Plaintiffs' request for declaratory relief. Opp. at 9. Thus, if the Court concludes that Plaintiffs are entitled to judgment on one or more claims, then DOJ has waived any objection to vacatur or a declaratory judgment.

DOJ does not dispute that Plaintiffs established the requirements for injunctive relief—a showing supported by cases decided since Plaintiffs' opening brief. *See Cnty. of King*., 2026 WL

2489361, at *14–15; *Salem*, 2026 WL 2445474, at *13–14. DOJ instead argues that an injunction is "unnecessary" because it would lack "'meaningful practical effect independent of … vacatur.'" Opp. at 9–10 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). Just as the Court entered both a stay of agency action under the APA and a preliminary injunction, R. 31, so too vacatur under the APA and a permanent injunction are warranted now because an injunction would provide relief beyond vacatur.

Plaintiffs seek to enjoin DOJ from imposing "any materially similar terms or conditions, … including through new grant applications, applications for continuation funding, notices of funding availability or opportunity, certifications, grant agreements, post-award submissions, or reimbursement requests." R. 58 ¶ 3(a). Vacating the Challenged Conditions would not, on its own, provide that forward-looking relief. And there is ample reason to believe that DOJ will impose similar conditions in the future. *See Oregon v. Kennedy*, 831 F. Supp. 3d 1048, 1081 (D. Or. 2026) (awarding injunctive relief in addition to vacatur and holding that an injunction against "any materially similar policy" was necessary due to the "likelihood" that the agency would implement "a similar policy").

Take, for example, the Immigration Condition. In the first Trump Administration, DOJ imposed immigration conditions on Byrne JAG grants, which Judge Leinenweber enjoined. DOJ "indicat[ed] to the district court that it would alter the conditions in future grants," but those "assurances" "proved false" when DOJ "imposed the very same conditions" the next year. *Barr*, 961 F.3d at 910–11. The Seventh Circuit thus affirmed a permanent injunction precluding DOJ from imposing materially identical conditions on future Byrne JAG grants because "a plaintiff injured by an unconstitutional or unlawful action in one year does not need to suffer injuries repeatedly in each ensuing year—and separately sue after each injury—to obtain relief." *Id.* at 910.

In the second Trump Administration, DOJ has continued to impose immigration-related grant conditions and even sued Chicago, Saint Paul, and many others for allegedly violating section 1373. There is thus good reason to believe that DOJ will seek to impose conditions that are materially similar to the Immigration Condition absent a permanent injunction. *See also Illinois v. FEMA*, 2025 WL 2908807, at *1 (D.R.I. Oct. 14, 2025) (agency violated preliminary injunction by re-imposing enjoined immigration conditions in "a ham-handed attempt to bully" plaintiffs).

An injunction would provide additional, necessary relief beyond vacatur:

- The requested injunction would prohibit DOJ from "enforcing … the Challenged Conditions or any materially similar terms or conditions" in grant "applications." R. 58 ¶ 3(a). This injunctive relief would confirm that DOJ cannot baselessly argue that mere vacatur permits DOJ to sue Plaintiffs based on certifications made in their grant applications.
- Unlike mere vacatur, the requested injunction would prohibit DOJ "and all those in active concert" with DOJ from "[r]etaliating against any Plaintiff for participating in this lawsuit." R. 58 ¶ 3(d); *see Anthropic PBC v. U.S. Dep't of War*, 2026 WL 2534714, at *29 (N.D. Cal. Aug. 27, 2026) (awarding injunction in addition to vacatur because vacatur would not "guard against further retaliatory actions"). There are good reasons to fear retaliation. To take just one example, the Trump Administration recently attempted to cut billions of dollars in funding for (among other programs) health-and-safety initiatives from Plaintiffs' states, "risk[ing] generational harm" to public health, all in an apparent attempt to punish Plaintiffs' states for enacting so-called "sanctuary" laws. *Illinois v. Vought*, 825 F. Supp. 3d 721, 725, 729–30 (N.D. Ill. 2026).
- An injunction could be enforced more easily through motion practice. *Cf. Abramowitz v. Lake*, 2026 WL 1652600, at *5 (D.D.C. May 14, 2026) (stating that "vacatur does not compel any particular further agency decisionmaking, as would an injunction, … nor does vacatur restrain

the agency from any particular subsequent course of action subject to the threat of contempt") (cleaned up). Motions to enforce injunctions in APA litigation have unfortunately become increasingly necessary because the federal government has at times acted in "disregard, if not defiance," of court orders. *City of Chicago v. U.S. Dep't of Homeland Sec.*, 2026 WL 1265428, at *3 (N.D. Ill. May 8, 2026); *see Oregon*, 831 F. Supp. 3d at 1081 ("administrative agencies under the current administration have a significant and troubling history of evading or flouting prior court orders") (citing cases).

- Injunctive relief would provide relief specific to Plaintiffs' constitutional claims. *See Anthropic*, 2026 WL 2534714, at *29 (awarding injunctive relief because "vacatur would not provide [plaintiff] relief as to its [constitutional] claims"); *see also Cook County v. Wolf*, 498 F. Supp. 3d 999, 1009 (N.D. Ill. 2020) ("victory for [plaintiff] on its [constitutional] claim may yield relief in addition to the [vacatur] the court is granting on Plaintiff's APA claims").

This case is thus nothing like *Monsanto*, where the plaintiffs themselves "represented" that the nationwide injunction entered by the district court did "not have any meaningful practical effect independent of its vacatur." 561 U.S. at 165; *see also City of Chicago v. Sessions*, 2017 WL 4572208, at *3 (N.D. Ill. Oct. 13, 2017) (distinguishing *Monsanto*). By contrast, an injunction is necessary here to provide complete relief from DOJ's unlawful actions. *See Massachusetts v. Nat'l Insts. of Health*, 164 F.4th 1 (1st Cir. 2026) (affirming judgment awarding preliminary injunction and vacatur).

## CONCLUSION

Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor.

Dated: September 29, 2026

Respectfully submitted,

**Mary B. Richardson-Lowry**
Corporation Counsel of the City of Chicago

By: /s/ *Stephen Kane*
Stephen Kane (IL Bar No. 6272490)
Rebecca Hirsch (IL Bar No. 6279592)
Chelsey Metcalf (IL Bar No. 6337233)
Laura Geary (IL Bar No. 6351762)
John Kauffman (IL Bar No. 6353229)
City of Chicago Department of Law
121 North LaSalle Street, Room 600
Chicago, Illinois 60602
(312) 744-0458
stephen.kane@cityofchicago.org
rebecca.hirsch2@cityofchicago.org
chelsey.metcalf@cityofchicago.org
laura.geary@cityofchicago.org
john.kauffman@cityofchicago.org

*Attorneys for Plaintiff City of Chicago*

**Irene Kao**
Saint Paul City Attorney

By: /s/ *Kelsey McElveen*
Kelsey McElveen**
Aaron Winter**
Assistant City Attorneys
Saint Paul City Attorney's Office
400 City Hall and Courthouse
15 Kellogg Boulevard West
Saint Paul, Minnesota 55102
Tel: (651) 266-8710
Fax: (651) 298-5619
Kelsey.McElveen@ci.stpaul.mn.us

*Attorneys for Plaintiff City of Saint Paul*

**Heidi von Tongeln**
City Attorney, City of Santa Monica

By: /s/ *Romy Ganschow*
Romy Ganschow**
Chief Deputy City Attorney
1685 Main Street, 3rd Floor
Santa Monica, California 90401
(310) 458-8336
romy.ganschow@santamonica.gov

*Attorneys for Plaintiff City of Santa Monica*

** Admitted pro hac vice